In re the MARRIAGE OF SCHATZ.

**Charles A. SCHATZ, Jr.,
Petitioner–Appellant,**

v.

**Audrey L. SCHATZ,
Respondent–Respondent.**

No. 15223.

Missouri Court of Appeals,
Southern District,
Division Two.

March 20, 1989.

Motion for Rehearing or Transfer
Denied April 11, 1989.

John R. Lewis, Lewis & Stevens, Springfield, petitioner-appellant.

Stephen L. Shepard, Shepard & Rahmeyer, P.C., Springfield, for respondent-respondent.

HOGAN, Judge.

This is an action for dissolution of marriage. The parties were married for 25 years, became the parents of five children, and by community standards, prospered. The appeal is focussed upon the division of separate and marital property required by § 452.330, RSMo 1986.[1]

Petitioner Charles A. Schatz, Jr., (hereinafter plaintiff) and respondent Audrey L. Schatz (hereinafter defendant) were married for 25 years. Five daughters were born of the marriage, two of whom were emancipated at the time of trial. The younger children, a female age 18 and female twins 13 years of age resided with the defendant. The children were in good health. The trial court awarded principal custody of the three younger children to the defendant and ordered the plaintiff to pay the total sum of $600.00 per month to the defendant as child support. Neither the award of custody nor the allowance for child support is questioned in this court.

At trial time the plaintiff was 50 years of age. He had been employed by the Dayco Corporation since 1959 and had become a "supervisor." Plaintiff's "net" monthly salary from Dayco was $1,828.66. He was also employed as a municipal judge by the City of Republic, Missouri. As a judge, the defendant's "net" monthly earnings were $371.52 per month. The trial court found as a fact that the plaintiff earned $32,838.07 in 1983, $34,360.00 in 1984 and $34,821.00 in 1985. The plaintiff is in good health. He is a high school graduate who has some college education.

The defendant was 46 years old at trial time. She testified that she had a bachelor of science degree and a master's degree in guidance and counselling. Defendant also had what counsel described as "librarian certification." The trial court found the defendant was employed by the Spokane School District as a guidance counsellor and that she earned "over" $15,000.00 annually. The defendant testified she earned $15,600.00 annually. The defendant was in good health.

The parties' property has been listed, valued and divided in detail so meticulous as to be reminiscent of the bankruptcy courts. The property set apart to the plaintiff and defendant was described in three schedules attached to the court's findings of fact as Appendices "A," "B" and "C." It is not necessary to reproduce, only to summarize those schedules.

1. Appendix "A" sets forth the separate, nonmarital property awarded to the plaintiff. Plaintiff's separate property consisted of a 139–acre farm together with a dwelling and all improvements located thereon. This farm was valued at $131,500.00; $23,700.00 of this figure represented an increase in value attributable to marital contributions. The total value of the farm as an item of separate property was, therefore $107,800.00.

2. Appendix "B" shows the marital property awarded to the plaintiff, Charles A. Schatz, Jr. The property falls into seven categories:

|  |  |
|---|---|
| A. Real property—the increase in value of the 139–acre farm, valued at | $ 23,700.00 |
| B. Stocks, Bonds, Notes, Pensions and Profit–Sharing plans valued at | 34,434.44 |
| C. Motor Vehicles valued at | 7,550.00 |

---

1. References to statutes and rules are to RSMo 1986 and V.A.M.R.

D.  16 items of farm equipment, valued at      $ 13,782.50

E.  12 life insurance policies which have a total cash value of      14,279.85

F.  Bank accounts in the amount of      5,452.05

G.  Miscellaneous property (44 items) valued at      9,237.19

     $108,436.03

The value of the marital property assigned to the plaintiff is $108,436.03. Plaintiff assumed marital debts in the amount of $1,635.84. Plaintiff therefore received marital property valued at $106,800.19.

3. Appendix "C" shows the marital property assigned to the defendant. Six types of property and property rights are listed:

A.  Real property—the family residence located at Republic, Missouri, valued at      $ 65,000.00

B.  Stocks, Bonds, Notes, Pensions and Profit–Sharing plans valued at      22,435.40

C.  One motor vehicle valued at      7,250.00

D.  A life insurance policy having a cash value of      1,879.00

E.  Bank accounts valued at      1,269.23

F.  Household goods, furniture and appliances valued at      9,088.25

     $106,921.88

The total amount of marital property awarded to the defendant, by our calculation, was $106,921.88.

The trial court also made two awards of maintenance. Plaintiff was ordered to pay the defendant the sum of $100.00 per month as "periodic, decretal" maintenance, and was further ordered to pay defendant the sum of $7,500.00 as maintenance in gross. Such is the general background of the case as material on appeal. The defendant has filed a motion to dismiss the appeal on the ground that it is moot. The motion was ordered taken with the case. The motion to dismiss is based on mistaken notions of law and is denied.

The first two points have to do with the valuation and award of the 139–acre farm. The trial court found that although the farm was separate, nonmarital property to which the plaintiff was entitled, "there was an increase in value of said separate, nonmarital property due to marital contributions which have a present value of $23,-700.00." In distributing the property, the court accepted the plaintiff's valuation of the farm and the defendant's evidence of the value of the marital contribution. In this court, plaintiff contends: 1) that the trial court erred and abused its discretion in finding that the increase in the value of the farm was marital property and in distributing the increase in value as a marital asset; and 2) the trial court erred in permitting the defendant to give her opinion testimony as to the increase in the value of the farm because she was not an owner of the farm or otherwise qualified to testify to its value.

As shown by plaintiff's exhibit 5, the 139–acre farm was deeded to the plaintiff by his parents in December 1969 subject to a life estate in the grantors, who are now deceased. The farm consists of two separate tracts, one of which has been improved. An appraiser, apparently employed by the plaintiff, valued the farm at $131,500.00 and the trial court accepted this appraisal. The defendant gave as her opinion that the fair market value of the farm was $99,500.00, and that $37,800.00 of that amount represented an increase in value since 1969. The defendant supported her testimony with an exhibit, designated respondent's exhibit "X," which has not been included in the record.

■ The plaintiff vigorously argues that the defendant was not qualified to testify to the value of the farm nor to the increase in value which represented marital contribution because she was neither an owner nor otherwise qualified. In his brief, the attorney for the plaintiff here quoted *part* of the record which, standing alone, would indicate that the defendant was not familiar with land in the area where the farm is located. Nevertheless the record, taken as a whole, warrants the conclusion that the defendant was familiar with the farm and the improvements located on it as well as other real property in the area and that during her marriage to the plaintiff she had become familiar with farming operations and the value of farm land generally.

Our courts have held that a witness may testify to land values even though the wit-

ness is neither an owner nor an expert, *In re Estate of Dennis*, 714 S.W.2d 661, 666 (Mo.App.1986); *In re Marriage of Barr*, 579 S.W.2d 833, 836 (Mo.App.1979), and have consistently adhered to the standard set down by our Supreme Court in *State ex rel. State Highway Commission v. Barron*, 400 S.W.2d 33, 36–37 (1966), thus:

" 'There is no exact rule by which the qualification of a witness to testify as to the value of land can be measured. . . .

One need not be an "expert," in the sense that word is ordinarily used, to testify as to the value of land. If the witness knows or has inspected the property, and if he has such information, knowledge, and skill which enable him to form an intelligent judgment, and if this knowledge and information is superior to that possessed by the ordinary person who composes the jury, then he should be permitted to testify. Beyond that any deficiency he may have goes to the weight of his testimony, not to [his] qualification. . . .' "

See also *State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc.*, 381 S.W.2d 20, 23–25 (Mo.App.1964). As this court there stated, the qualification of one standing in the role of an expert is a preliminary question and is largely a question for the trial court whose exercise of discretion will not ordinarily be disturbed on appeal unless that discretion has been abused or exercised in clear error of law. *State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc.*, 381 S.W. 2d at 25. The opinion might be expanded to demonstrate the basis for our conclusion, but quotation of long excerpts from the record is unnecessary. We find neither an abuse of discretion nor any clear error of law in permitting the defendant to testify to the value of the farm, including an appreciation in value.

The plaintiff's second assignment is related to the first. As briefed and stated, his second assignment of error is that "the trial court erred and abused its discretion by its finding that the increase in value of the non-marital property is itself marital property and assessed the marital property as an asset of the appellant in division of marital property." When one looks to the substance of this point, it seems to be that there was no evidence to support a finding that the farm appreciated in value between 1969 and the date of the decree as a result of a contribution of marital funds or effort, and no evidence that the amount of the appreciation, if any, was $23,700.00.

If it is the plaintiff's purpose to argue that the value of the farm, both before and after the dissolution, could have been more accurately developed, we agree. To begin with, the plaintiff's original interest in the farm was that of a remainderman, not a fee owner. The warranty deed conveying the farm to the plaintiff was executed December 15, 1969, by Charles A. Schatz and Emma J. Schatz, husband and wife. The grantors were the plaintiff's parents. The plaintiff's mother died in 1973. His father died in September 1986. So, when this action was commenced October 2, 1985, plaintiff was a remainderman, not a fee owner. As far as we can determine, plaintiff valued the farm, for purposes of this dissolution action, as if he had been the owner in fee simple at all times after he acquired his interest in 1969. The defendant's valuation of the farm was less than certain, and upon the record it would be impossible to calculate the value of the parties' interests nicely. See and compare *In re Marriage of Herr*, 705 S.W.2d 619, 624–25 (Mo.App.1986). Nevertheless, we consider the record sufficient to determine the real question presented by this assignment of error, which is whether, upon the evidence presented, the marital community is entitled to share in the appreciation of the farm attributable to improvements made by marital funds and labor. See *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 825 (Mo. banc 1984), citing *Tibbetts v. Tibbetts*, 406 A.2d 70, 76–77 (Me.1979). We bear carefully in mind that the defendant's performance of usual spousal duties is not such a substantial contribution of effort as to cause an increase in the value of separate property to be marital property. *In re Marriage of Herr*, 705 S.W.2d at 623.

In this case it is manifest there was a substantial appreciation in the value of the

farm as a marital asset between the time the plaintiff acquired his interest and the time the marriage was dissolved. In part, the appreciation was attributable to the death of the plaintiff's grantors, but there was substantial evidence of an increase in value apart from these fortuities. Some of the permanent improvements which could have caused the appreciation were noted by the trial court. The court noted the construction of a storage barn which cost approximately $3,600.00; the erection of a pole barn which cost $5,635.00, and improvements made on a tenant house. The appraiser's report submitted to the trial court by the plaintiff indicated that one of the parcels of land which made up the farm had been seeded to fescue, fenced and cross-fenced. The fences and improved pasture on the other tract were " 'good enough to hold cattle.' "

■ The expenses of operation of the farm, and inferably the improvements which contributed to the appreciation in the value of the farm were paid, in substantial part, from a bank account characterized as a "farm account." The plaintiff testified at one point that the money which went into the "farm account" was "obtained from the farm. *From what was made off of it.*" (Emphasis ours.) There is other evidence from which it might be inferred that the bank account or bank accounts maintained by the parties were joint accounts. The principle which controls classification of the appreciation or increase in value of the farm was stated in *Hull v. Hull,* 591 S.W.2d 376, 381 (Mo.App.1979), thus:

"The spouse excluded from participation in the benefit of value appreciation to separate property *is not, however, without appropriate compensation if marital assets have contributed to that increase.* ... This is not to say that the separate property thereby acquires the status of marital property or that the other spouse is entitled to benefit from value increases in the separate property resulting from independent forces of the marketplace and the economy. The increment to which this principle applies is that demonstrated to have

come from marital resources and efforts." (Emphasis added.)

The rule stated by our colleagues of the Western District in *Hull* appears to be the principle generally followed in classifying and apportioning increases in the value of separate property. Two types of increase in value are recognized. What is called "active" appreciation is appreciation caused by marital funds or marital efforts, and it generally constitutes marital property. "Passive" appreciation is that increase in value produced by normal inflation or normal market forces, and it generally constitutes separate property. The definition of "marital" funds is generally an issue of law, but the question whether an increase in the value of separate property was produced by marital funds or efforts is usually a question of fact. L. Golden, Equitable Distribution of Property § 5.39 (Cum.Supp. 1988, pp. 76–77).

■ In the case before us, assuming the "farm account" consisted of funds produced by the farm as separate property, the trial court could have found that the improvements made on the farm were financed with marital property. This is true because *income* from nonmarital property acquired after the marriage is marital property. *Wilhelm v. Wilhelm,* 688 S.W.2d 381, 383 (Mo.App.1985); *Brunson v. Brunson,* 569 S.W.2d 173, 178 (Ky.App.1978). Our § 452.330.2(5), RSMo 1986, in effect when this case was tried, was but a rescript of § 307 of the original Uniform Marriage and Divorce Act. The official note to § 307 of the uniform act stated, in part:

"The phrase 'increase in value' used in subsection (b)(5) [our subsection 542.330.-2(5)] is not intended to cover *the income* from property acquired prior to the marriage. Such income is marital property. *Similarly, income from other nonmarital property acquired after the marriage is marital property.*" (Our emphasis.)

*Brunson v. Brunson,* 569 S.W.2d at 178.

■ So, in considering the plaintiff's second assignment of error, we are remitted to basic principles. No specific findings

were requested or made concerning the nature of the appreciation in value of the farm or its cause. Rule 73.01(a)(2) provides in terms that all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached. The trial court must therefore be deemed to have found that the farm was subject to active appreciation caused by the expenditure of marital funds. Our review of the whole record satisfies us that the trial court's action was supported by substantial evidence and that the court neither misstated nor misapplied the law. Careful consideration of the record and exhibits generates no firm belief that the order appealed from is wrong. We must therefore affirm the trial court's action in finding that the appreciation in the value of the farm was marital property and its action in apportioning the increase in value to the plaintiff. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo.banc 1976).

The plaintiff's third point is that the trial court erred in awarding the defendant both periodic maintenance and maintenance in gross. In paragraph 14 of its amended decree, the trial court found:

"During the past 26 years of marriage, the [defendant] has had primary responsibility for the care of the marital home and children and has also contributed $169,601.60 to the marriage from outside employment. Although the Respondent has a Masters Degree and is currently employed by the Spokane School District as a Guidance Counselor earning over $15,000.00 a year, considering all other relevant factors, including those set forth in Section 452.335.2 R.S.Mo., this Court finds it necessary to award periodic, decretal maintenance to the [defendant]."

In the decretal part of its judgment, the trial court ordered payment of $100.00 per month to the defendant as "periodic, decretal" maintenance. In the "argument" part of his brief the plaintiff states it is his contention that the award of both periodic maintenance and gross maintenance is an abuse of discretion inasmuch as it is contrary to the concept of § 452.335.2. Basi-

cally, the argument, as developed, is that the defendant is employable at an income sufficient to meet her reasonable needs.

Perhaps so, but the evidence permits the inference that some award of maintenance was justified. The defendant prepared a statement of her monthly income and expenses (before us as Respondent's exhibit W) which was introduced as having been "[v]ery laboriously" prepared. According to this statement, the defendant's total average monthly income was $1,026.05. Her expenses, by careful calculation, came to $1,469.28.

■ It is true, as the plaintiff maintains, that a spouse seeking regular maintenance must establish both that he (or she) lacks sufficient property to provide for his reasonable needs, *and* is unable to provide such support through employment or because of custodial duties. Section 452.335.-1; *Brown v. Brown*, 673 S.W.2d 113, 115 (Mo.App.1984); *In re Marriage of K.B.*, 648 S.W.2d 201, 205[3] (Mo.App.1983). However, the consistent judicial construction of § 452.335 since its enactment has been that a wife is not obliged to consume her apportioned share of marital property in order to be entitled to an award of maintenance. *Ingebritson v. Ingebritson*, 677 S.W.2d 924, 926 (Mo.App.1984); *Fausett v. Fausett*, 661 S.W.2d 614, 617 (Mo.App.1983); *In re Marriage of Schulte*, 546 S.W.2d 41, 49 (Mo.App.1977); *In re Marriage of Powers*, 527 S.W.2d 949, 955 (Mo.App.1975). In general, it is true to say that a trial court is vested with considerable discretion in granting maintenance awards, and our appellate courts have interfered with awards of maintenance only when the order is patently unwarranted or is wholly beyond the means of the spouse who pays maintenance. *In re Marriage of Reed*, 762 S.W.2d 78, 85 (Mo.App.1988); *In re Marriage of Schulte*, 546 S.W.2d at 47 and cases cited n. 7.

■ As far as the award of decretal maintenance is concerned, we believe the trial court could have found that the defendant was, at least for the present, eligible for an award of maintenance. The statu-

tory conditions imposed by § 452.335.1(1) and (2) are relative, not absolute. *In re Marriage of Schulte*, 546 S.W.2d at 49; *Casper v. Casper*, 510 S.W.2d 253, 254–255 (Ky.1974). The defendant is in good health and is employed. Nevertheless, teaching in the public school system is not highly remunerative and the record is subject to the interpretation that the defendant's chances for advancement are limited. The defendant testified, without objection, that local studies of professional opportunities indicated the defendant's specialized field is overcrowded. The defendant was awarded no income-producing property. There is a substantial disparity between the parties' capacity to earn and that is a sound reason for an award of maintenance even though the disparity is not as dramatic as that noted in *In re Marriage of Jadwin*, 671 S.W.2d 9, 10 (Mo.App.1984), and *In re Marriage of Harrison*, 657 S.W.2d 366, 370[4, 5] (Mo.App.1983). The trial court did not abuse its discretion in awarding the defendant the sum of $100.00 per month.

The defendant further complains that an award of maintenance in gross was not authorized, because periodic maintenance had been awarded. Our courts have held that § 452.335 authorizes awards of both periodic and lump sum maintenance, usually with the caveat that both types of maintenance should be awarded only in "special situations." *Doerflinger v. Doerflinger*, 646 S.W.2d 798, 800 (Mo. banc 1983); *Scott v. Scott*, 645 S.W.2d 193, 197[6] (Mo.App.1982); *Warren v. Warren*, 601 S.W.2d 683, 686, n. 1 (Mo.App.1980). The decisions suggest, without directly holding, that an award of maintenance in gross may be used as a sort of "equalizer" to balance the equities between the parties in dividing the marital and nonmarital property. See *Scott v. Scott*, 645 S.W.2d at 196 ("A cash award is in certain cases a very useful device.") The only real issue presented concerning the award of maintenance in gross is whether there is a tenable record basis for the award.

The trial court made findings of fact, but no particular finding which is correlated with the decretal part of its judgment ordering the plaintiff to pay defendant the sum of $7,500.00 as maintenance in gross, or lump sum maintenance. We cannot confidently say why the trial court ordered the lump sum payment of $7,500.00. The defendant suggests in her brief that the award of maintenance in gross was made to equalize the division of marital property. The part of the record to which we are cited—doubtless inadvertently—does not warrant the conclusion the defendant would have us draw.

Given the fact that awards of maintenance are matters which lie in the sound discretion of the trial court, we think we must affirm the award of maintenance in gross. The judgment is presumptively correct, and the plaintiff has the burden to demonstrate that it is erroneous. *Massman Construction Co. v. Kansas City*, 487 S.W.2d 470, 478[6] (Mo.1972); *Weston v. Great Central Insurance Company*, 514 S.W.2d 17, 21[1–3] (Mo.App.1974); *Pallardy v. Link's Landing, Inc.*, 536 S.W.2d 512, 515 (Mo.App.1976). If reasonable men could differ as to the propriety of an action taken by the trial court, there has been no abuse of discretion, *Shirrell v. Missouri Edison Co.*, 535 S.W.2d 446, 448–49[2] (Mo. banc 1976); *James v. Turilli*, 473 S.W.2d 757, 763 (Mo.App.1971), and this rule applies to allowances made in dissolution cases. *Westrich v. Westrich*, 694 S.W.2d 873, 879 (Mo.App.1985). Considering that the trial court was attempting to distribute separate and marital property valued at $213,722.00, we cannot say the award of $7,500.00 to the defendant was error requiring remand or recalculation on our part, as the plaintiff suggests. The judgment is affirmed.

FLANIGAN, P.J., and PREWITT, J., concur.

MAUS, J., took no part in the consideration or decision of this case.