In re the **MARRIAGE OF Charles Stephen WILD, Petitioner–Respondent,**

and

**Renee Marie Wild, Respondent–Appellant.**

No. 15762.

Missouri Court of Appeals, Southern District, Division One.

July 26, 1989.

William J. Lasley, Flanigan, McCanse & Lasley, Carthage, for petitioner-respondent.

David P. Vandagriff, Monett, for respondent-appellant.

GREENE, Judge.

On May 6, 1988, the marriage of Charles Stephen Wild (Steve) and Renee Marie Wild (Renee) was dissolved. In its judgment, the trial court, in addition to entering the decree of dissolution, awarded primary custody of the couple's two minor children to Steve, and divided the marital property of the parties, in which division it declared that certain assets, including a promissory note from Dale Wild Sarcoxie Nurseries, Inc., made payable to Steve, were his nonmarital property.

Renee appeals, contending the trial court erred in (1) holding that the corporation promissory note received by Steve from the nursery prior to the dissolution was his separate property, (2) making an inequitable distribution of the marital property, and (3) awarding custody of the children to Steve. We affirm.

The battle royal in this case preceding the trial court's judgment was intense, and is evidence supporting the argument that there should be a better way of handling domestic relations disputes than protracted litigation, which is becoming the rule, rather than the exception, when money or the custody of children is involved.

The transcript of 545 pages contains the testimony of 18 witnesses. There were 28 exhibits received in evidence, and the legal file, which contains the pleadings, motions, etc., encompasses 277 pages, with a 21–page supplement. After pondering over this mountain of material, the trial court made findings of fact and conclusions of law and issued the judgment in question.

Since this was a court-tried case, it is mandated by law that we must uphold the trial court's decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Ederle v. Ederle*, 741 S.W.2d 883, 885 (Mo.App.1987).

Renee's first point relied on concerns the trial court's finding that the balance due Steve on the promissory note from the nursery was not marital property. In reviewing this issue, we are mindful of the fact that a trial court possesses broad discretion in identifying marital property. *Harry v. Harry,* 745 S.W.2d 824, 825 (Mo.App.1988).

In cases where the evidence is contradictory regarding what was and what was not regarded by the parties as marital property the trial court has the right to believe or disbelieve all, part, or none of the testimony of any witness. The credibility to be assigned to such testimony is a decision for the trial court, not us, and we will not substitute our judgment for that of the trial court in deciding which witnesses were the most believable.

■ In its judgment on this issue, the trial court found that the promissory note from Dale Wild Sarcoxie Nurseries, Inc. was Steve's non-marital property. In its findings of fact and conclusions of law supporting this portion of the judgment, the trial court said:

> One primary issue in this case is what constitutes marital and non-marital property. It is the finding of this Court that the Petitioner received the corporate stock from his parents as a gift. At the time the stock was sold to Sarcoxie Nursery, Inc. the amounts of $58,928.40 became marital property when it was commingled was [sic] marital funds, however the remaining unpaid proceeds of that note retain their non-marital property character. At the time of the dissolution of marriage only $3,477.56 of the $58,-928.40 was in existance [sic] and that has been divided as a marital asset.

Viewed in the light most favorable to support these findings and conclusions, there was substantial evidence from which the trial court could reasonably find that beginning in 1967, long before his marriage to Renee in 1975, Steven began receiving shares of stock in Dale Wild Sarcoxie Nurseries, Inc., from his parents, Dale and Sue Wild. The nursery was a family-owned business which had been started by Steve's great-great-grandfather in 1875, and had

been passed down through successive generations to Steve's father, Dale. Steve was an only child. The business entity that managed the nursery's affairs was changed to corporate status in the mid–1960's, and Steve began receiving stock shortly thereafter. No consideration was paid for the stock, and there is nothing in the corporate records to indicate that the transfer of ownership of the stock certificates was anything but a gift. Steve and Renee were married in 1975. Steve continued to receive stock from his parents after the marriage. The stock was issued in his name only, and there is no documentary evidence that Renee was ever considered as a co-recipient of the gift.

By the end of 1976, Steve owned 559 shares of stock in the nursery company. In 1982, Dale and Sue Wild, in an effort to divest themselves of all stock ownership of the nursery over a six-year period, continued to effect the transfer of company stock from them to Steve, and also to Darrell Kopf, a longtime employee of the nursery. The stock was given to Kopf because he was doing a good job, and in hopes that he, together with Steve, would continue to carry on the family business. Steve was to eventually have 52 percent of all of the stock and Darrell 48 percent, so that Steve would retain a controlling interest in the company.

On September 23, 1982, the corporation entered into a deferred compensation agreement with Dale Wild under which Dale, in recognition for services he had performed for the corporation over the years for which he had not been adequately compensated, would receive deferred compensation in the amount of $250,000 payable at the rate of $25,000 a year during his lifetime, for a period not to exceed 10 years, or, if he predeceased his wife, such payments were to go to her. The agreement provided that if both Dale and Sue died before the entire $250,000 had been paid, the corporation had no further liability on the deferred compensation agreement. Steve and Darrell had no individual liability arising from the agreement, and were not individual parties to it.

By April of 1987, Steve had received 871 shares of stock in the corporation from his parents. All of these transactions were reported on federal gift tax returns, as were the stock transfers to Darrell Kopf. There is nothing in those returns, or in any other documents in the record, that indicate that the wives of Steve and Darrell were to be co-recipients of the stock or that the stock transfers were anything but gifts. There is nothing to show that Steve or Darrell ever paid anything for the stock they received, or that they were expected to do so. There is nothing in the record to indicate Renee ever contributed anything of significant value to the corporation that could be considered as consideration for the grant of an interest in the stock to her.

On May 9, 1987, after a business dispute with Kopf, Steve sold his 871 shares of stock to the corporation for the sum of $263,042. Steve received $48,928.40 cash ($50,000 minus a debt he owed the corporation of $1,071.60) on the date of the signing of the stock purchase agreement, an additional $10,000 in cash on January 4, 1988, and, in payment of the balance due received a promissory note in the sum of $203,042, bearing interest of $7\frac{1}{2}$ percent with weekly payments due Steve in the sum of $555.29 a week commencing January 4, 1988, and continuing for 10 years.

On July 15, 1987, Steve petitioned to dissolve his marriage to Renee, requesting that he be awarded custody of the two minor children of the parties, and that there be a fair and equitable distribution of the marital property. Renee counter-sued, asking for child custody, a division of marital property, and other relief. The trial and ensuing judgment followed.

Section 452.330.1 RSMo 1986 provides that in dissolution of marriage actions, the trial court shall set aside to each spouse his non-marital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors, which factors are set out in the statute. Sections 2 and 3 of the statute state what is, and what is not, marital property and read as follows:

2. For purposes of sections 452.300 to 452.415 only, **"marital property"** means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage.

3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. Each spouse has a common ownership in marital property which vests not later than the time of commencement by one spouse against the other of an action in which a final decree is entered for dissolution of the marriage or legal separation, the extent of the vested interest to be determined and finalized by the court pursuant to this chapter. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.

Renee's counsel has not presented us with any coherent argument as to why the stock Steve received from his parents before he married Renee should be considered as anything other than non-marital property. He argues, however, that there is a statutory presumption favoring a holding that property acquired during a marriage is marital property, that the burden is on the person contending otherwise to prove by clear and convincing evidence that such acquisition was not marital property, and that Steve did not carry that burden. The trial court thought such burden had

been met in this case, and we agree with the trial court.

Renee's contention raised at trial that the deferred compensation agreement referred to above was, in effect, a "buy out" of Dale and Sue Wild's interest in the corporation, and, therefore, the receipt of the shares of stock by Steve and Darrell were not really gifts, was rejected by the trial court, and rightly so, since such a conclusion had no sound evidentiary basis. The trial court did not abuse its discretion in determining that the transfer of stock from Darrell and Sue Wild to Steve and to Darrell were gifts of the stock, and that the subsequent sale of Steve's stock was the sale of a non-marital asset. *See S.R. v. S.M.R.*, 709 S.W.2d 910, 913–914 (Mo.App.1986), *Milde v. Milde*, 723 S.W.2d 471, 472–73 (Mo.App. 1986), and *In re Marriage of Pitluck*, 616 S.W.2d 861, 862 (Mo.App.1981), for examples of similar fact situations where stock transfers were held to be gifts. The conversion of the stock to cash and a promissory note did not affect the status of the note as Steve's personal property. *Cartwright v. Cartwright*, 707 S.W.2d 469, 471–472 (Mo.App.1986); *Bizzell v. Bizzell*, 697 S.W.2d 559, 562–563 (Mo.App.1985); § 452.330.2(1), (2). There was substantial evidence to support the trial court's judgment that the note was not marital property, and such a finding was not against the greater weight of the credible evidence.

■ Renee's second point raised on appeal, as stated in full, is as follows:

The trial court erred in holding that the proceeds from the corporation promissory note received by Steve Wild, the sum of approximately $65,036.19, constituted marital property, but in dividing as marital property only the sum of $3,477.56, representing that portion of the proceeds which remained on the second day of trial, for the reason that Steve Wild squandered and/or secreted a great portion of the original note proceeds and did not properly account to the trial court for said proceeds.

On this issue, the trial court found that the $58,928.40 Steve had received in cash prior to trial, by reason of the sale of stock, became marital property when it was commingled with marital funds, but at the time of the dissolution only $3,477.56 remained, which sum was declared by the trial court to be a marital asset. The trial court correctly concluded that when a non-marital asset is sold and the proceeds of the sale are commingled with marital funds, such proceeds become marital property. Steve did not appeal from this finding, conclusion and portion of the judgment.

■ Renee's conclusion that Steve had squandered most of the $58,928.40 in issue and, therefore, she should have received more marital property to offset such a disposition of the money has no basis in fact. There was no evidence produced at trial that any part of the funds was either secreted or squandered. Steve produced evidence at trial, including a check register totalling $44,081.21, and other evidence showing additional expenditures of $17,-162.90 during the time frame in question, to show that the money went to pay debts of the parties, purchase items constituting marital property, and to make improvements on the home. In its division of the marital property, the trial court made a net award to Steve of property valued at $33,-959.75, and ordered him to pay Renee $12,-125 in cash, thus making his net award $21,834.75. Renee was awarded marital property valued at $9,413.36 plus $12,125 cash for a total award of $21,538.36. Considering the statutory factors including economic circumstances, and the fact that Steve has the expense of raising the children, we cannot say that the trial court abused its discretion in the division of the marital property. *In re Marriage of Dildy*, 737 S.W.2d 756, 760 (Mo.App.1987); § 452.330.1(3) RSMo 1986.

Despite all urgings by Renee's lawyer to the contrary, the trial court, in its judgment, did account for all of the money left in the party's joint account at the time it heard evidence, which was the sum of $3,477.56, and declared, to Renee's benefit, that such sum was marital property. In addition, Renee benefitted from the fact that the rest of the money, with relatively few minor exceptions, went to pay the parties' bills, or purchase marital property in which she ultimately gained a substantial interest. The point has no merit.

■ Renee's final point of claimed error concerns the award of custody of the two minor children to Steve. The point reads as follows:

> The trial court erred in awarding custody of the minor children of the parties to Steve Wild because such a custody determination was not in the best interests of the children considering
>
> (1) The interaction and interrelationship of each child with his parents, his siblings, and any other person who may significantly affect the child's best interests;
>
> (2) Each child's adjustment to his home, school and community;
>
> (3) The mental and physical health of all individuals involved; and
>
> (4) The needs of each child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of each child,
>
> and other factors mandated by § 452.375.2 because Renee Wild demonstrated by a preponderance of the evidence that she was far better able to provide said children with appropriate and effective care and training than was Steve Wild.

On this issue, the court found, in considering the factors enumerated in § 452.375, that the best interests of both children would be served by awarding custody to Steve, with liberal visitation rights to Renee.

Appellate courts will not disturb trial court custody orders unless they are manifestly erroneous, and the welfare of the children requires a different disposition. *In re Marriage of Walls*, 743 S.W.2d 137, 138 (Mo.App.1988). Such is not the case here. Extrinsic evidence was received concerning the fitness, or lack of it, of both Steve and Renee as parents, and of their desire and ability to act as the proper custodian of their children. In addition, the trial court ordered, received, and reviewed home studies conducted by representatives of the Jasper County Family Services. Steve's motion in this court requesting that we supplement the legal file on appeal with these studies is sustained.

We have reviewed all of the transcript testimony on the custody question and have read the home studies. The trial court was correct in its observation concerning both parties' conduct during the marriage when, in considering the division of marital property, it stated in its findings, "neither side can boast a sterling character." It suffices to say there was substantial evidence that Renee engaged in numerous adulterous relationships during the marriage, that she was a confessed "slob" and a convicted shoplifter, that the children had been left unattended while she was bar-hopping, etc., with her friends, and that she physically abused a daughter of Steve's by a previous marriage who also resided with them.

On the other hand, Steve, although no paragon of virtue, was described by several witnesses as a loving and attentive father. School authorities detailed improvements in the children's physical condition and the manner in which their health problems were dealt with after Steve assumed primary custody of them. Both children expressed a desire to live with their father. There was no witness, other than Renee, who believed the best interest of either child would be served by granting custody to her.

The trial court's findings and judgment on the child custody issue is supported by substantial evidence, and the award of the children's custody to Steve was not an abuse of the trial court's discretion.

Based on our examination of the voluminous record in this case, and after applying the applicable principles of law, we hold that the trial court's judgment is supported by substantial evidence, is not against the weight of the evidence, and is not based on any erroneous declaration or application of law.

Accordingly, the judgment is affirmed.

HOLSTEIN, C.J., and CROW, P.J., concur.