**Richard J. RAPP, Petitioner–Appellant,**

v.

**Yvonne E. RAPP,
Respondent–Respondent.**

**No. 56601.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 10, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 11, 1990.

Application to Transfer Denied
June 19, 1990.

Ray A. Gerritzen, St. Louis, for petitioner-appellant.

Michael A. Gross, Margaret W. Fox, St. Louis, for respondent-respondent.

STEPHAN, Judge.

Husband appeals from a dissolution decree. He attacks the trial court's determinations of marital and separate property, the distribution of marital property, the trial court's failure to sustain his motion to modify a PDL order, and its failure to apportion some percentage of wife's professional college degree to husband. He further asserts that the trial judge was biased against him and should be admonished. We affirm.

This is a court-tried action. We, therefore, affirm the judgment unless

there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court's assessment of the credibility of witnesses. *Davis v. Davis*, 693 S.W.2d 879, 881–882 (Mo.App.1985).

Husband and wife married June 15, 1981. No children were born of the marriage, although both parties have children from previous marriages. Wife completed her college education after the parties' marriage and immediately began working as a teacher for learning disabled children. Husband was self-employed throughout the marriage.

The trial court determined that husband had separate property totalling $90,106.31. The marital property was distributed as follows:

Husband

| | |
|---|---|
| $21,332.35 | (proceeds from House on Cross Timbers) |
| 18,000.00 | (IRAs) |
| 25,000.00 | (horse named Freds Dellfene) |
| 9,000.00 | (1987 Oldsmobile Regency) |
| 4,291.93 | (checking account) |
| $77,624.28 | |

Wife

| | |
|---|---|
| $70,000.00 | (proceeds from House on Cross Timbers) |
| 483.33 | (checking account) |
| 638.98 | (Safeco—unused homeowners' insurance) |
| 3,785.10 | (Teachers Association Account) |
| 7,000.00 | (insurance proceeds on jeep) |
| $81,907.41 | |
| (500.00) | (1988 Plymouth Horizon having a value of $6,300.00 and subject to a note in the amount of $6,800.00) |
| $81,407.41 | |

Husband raises six points on appeal. They are: 1) that the trial court erred, under the source of funds rule, in determining the house at 14303 Cross Timbers and the IRA accounts were marital property; 2) that the trial court erred in failing to sustain husband's motion to modify the PDL order of August 20, 1987; 3) that the trial court erred in its distribution of what it determined was marital property; 4) that the trial court erred in failing to apportion wife's professional college degree; 5) that the trial judge allowed the case to become personal when another circuit court judge, Judge O'Brien, testified on wife's behalf; and 6) the trial judge failed to allow proper cross-examination of Judge O'Brien.

In his first point, husband complains that the trial court erred in failing to consider the source of funds rule when it determined what property was marital. Specifi-cally, husband argues that the condominium, known as Cross Timbers, was his separate property because it was purchased by R.J. Rapp Investment Co. Husband also argues that the IRA accounts were funded solely by money from a $50,000 bequest from husband's deceased father.

A trial court possesses broad discretion in identifying marital property. *In re Marriage of Wild*, 774 S.W.2d 543, 545 (Mo.App.1989). All property acquired by either spouse subsequent to the marriage is presumed to be marital property regardless of how title is held. *Harry v. Harry*, 745 S.W.2d 824, 825–826 (Mo.App.1988). A party claiming that property, presumed marital, is in fact separate must assume the burden of rebutting the presumption by clear and convincing evidence. *Id.* at 826. A spouse may by agreement, either ex-

press or implied, or by gift, convert an item of separate property into marital property. *Kramer v. Kramer*, 709 S.W.2d 157, 159 (Mo.App.1986).

■ Husband testified that one of his businesses, R.J. Rapp Investment Co., purchased the condominium at 14303 Cross Timbers Court. The evidence shows that husband and R.J. Rapp Investment Co. signed the contract for sale. At the closing, however, the deed was signed by and issued to "Richard J. Rapp and Yvonne E. Rapp, his wife." Wife also signed, and became liable on, the promissory note and deed of trust.

Husband argues that he never intended for his wife's name to be placed on the title to the property and that the source of funds to purchase the condominium came entirely from his separate property. There was testimony that the bank ordered the title and placed wife's name on it because they required her name on the loan documentation.

This is not enough to overcome the presumption that Cross Timbers was marital property. Husband signed all the documents even though they did not reflect his intention. He never expressed, by formal agreement or otherwise, that the documents did not reflect his wishes until he testified at trial. Wife testified that the purchase was a mutual decision and that they decorated the home together. As stated, *supra*, the trial court is accorded much deference in determining the credibility of witnesses. *Davis*, 693 S.W.2d at 881–882.

■ Based on the evidence and testimony at trial, husband has failed to prove the condominium was his separate property. If it ever was separate, it was impliedly transmuted into marital property. Nothing in the source of funds rule prevents the transmutation of an item of separate property into marital property. *Kramer*, 709 S.W.2d at 159.

■ Husband also complains that the trial court erred in determining that the IRA accounts worth $18,000.00 were marital property. Evidence regarding the IRA ac-

counts was, at best, confusing. Husband testified that the IRAs were purchased, for the most part, with funds from R.J. Rapp Investment Co. Wife testified that the IRAs were purchased with the proceeds from joint income tax refunds.

The only documentary evidence we are referred to is Exhibit 25, a checkbook from Colonial Bank, and a chart prepared by husband's accountant. Husband argues that he deposited a $50,000.00 bequest from his father in the Colonial Bank account. Check No. 1352, written April 1, 1983, should be the next transaction and was the 1983 IRA contribution. He concludes that since the money for the contribution came from his father's bequest to him, it is his separate property. Exhibit 25, however, begins with check no. 1572 written on December 24, 1984. It is not the function of the appellate court to sift through material furnished by the parties on appeal to find that which is relevant. *Hill v. Air Shields, Inc.*, 721 S.W.2d 112, 116 (Mo.App.1986). Nevertheless, we did review the exhibits filed but were unable to find any evidence regarding this transaction.

The chart prepared by husband's accountant indicates the IRA contributions came out of the Colonial Bank account. It does not indicate every source of funds that went into that account. The money might have been husband's separate property, it also might have come from joint tax return refunds.

The only clear evidence before the trial court was the testimony of the parties and we accord the trial court deference in this area. *Davis*, 693 S.W.2d at 881–882. We deny Point I in its entirety.

Husband's second point states that the trial court erred in failing to make a retroactive modification of the PDL order for maintenance. He argues that the $250.00 per month awarded to wife should have been eliminated as of March 21, 1988 and his payments refunded to him because he has been unemployed since that time.

Husband also argues that the trial court's "decree of March 23, 1989 is devoid

of any ruling on the motion to modify the PDL decree." In making this assertion, husband's attorney apparently overlooked the first page of the Order, Judgment and Decree of Court, dated March 23, 1989. There the trial court specifically found "no basis to modify the order of maintenance PDL to eliminate the award of maintenance PDL awarded therein." We agree with the trial court.

■ An award of temporary maintenance is a matter resting within the discretion of the trial court, and we will reverse only for abuse of discretion. *Hermelin v. Hermelin*, 766 S.W.2d 670, 672 (Mo.App. 1989). The trial court had the opportunity to assess the credibility of the witnesses and determined that, despite his unemployment, husband was capable of providing maintenance PDL to his wife. He continued to look for work and lived with his mother. He received loans during this time from members of his family, but did not apply for unemployment. After reviewing the evidence we cannot say the trial court's judgment constituted an abuse of discretion. Point II is denied.

Husband next complains that the trial court's "tremendously lopsided" distribution of marital property was erroneous and an abuse of discretion. Wife received $81,407.41 and husband $77,624.28 of the marital property.

■ A trial court is vested with considerable discretion in dividing marital property and an appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Cartwright v. Cartwright*, 707 S.W.2d 469, 474 (Mo.App.1986). Equal division of property is not required and disproportionate divisions are routinely affirmed. *Mika v. Mika*, 728 S.W.2d 280, 283 (Mo.App.1987).

■ Husband's entire argument is merely a diatribe on wife's conduct during the marriage. He presents us with a minimum of relevant facts. Pertinent to our

review, husband received the only income producing property, the IRA accounts. *See, Calia v. Calia*, 624 S.W.2d 870, 872–873 (Mo.App.1981). The distribution itself was nearly even and was well within the trial court's discretion.

■ Husband also argues that the trial court erroneously valued the horse, Freds Dellfene, at $25,000.00 when it was actually worth much less. In his reply brief, husband informs us that the horse was sold for $7,500.00. This is not dispositive. The only evidence on the value of the horse before the trial court was the testimony of husband and wife. Absent more substantive evidence there was no error in valuing the horse at approximately what husband paid for it. Point III is denied.

■ In his fourth point, husband argues that the trial court erred in not allocating part of his wife's college degree to him. Wife completed her college education subsequent to the marriage. Husband produced checks, made out to Maryville College, totalling $4,258.00. Husband argues that, because he paid for a large part of wife's education, he should receive a proportionate share of wife's earnings. He asks that we value wife's degree at $30,000.00 per year for the next twenty-seven years, at which time wife turns sixty-five.

It is true that husband paid a portion of wife's tuition. Wife does not, however, have a valuable asset which can be divided. Husband's valuation is actually wife's future earning capacity, and future earning capacity has not been deemed marital property. *Hanson v. Hanson*, 738 S.W.2d 429, 435 (Mo. banc 1987).

Husband cites only one case in support of his argument, *Taylor v. Taylor*, 736 S.W.2d 388 (Mo. banc 1987).[1] In that case, Mrs. Taylor was a chiropractor. Her practice was valued as a marital asset and her husband was allowed to receive a percentage thereof because of his sacrifices in putting her through school. In the present case, wife's "business" has no value. She

---

1. *Taylor* and *Hanson, supra,* were handed down by our Supreme Court on the same day. The basic holdings of the cases is that the goodwill that attaches to a business entity is a marital asset, but that the reputation and skill of the individual practitioner is not a component.

is a teacher whose only value lies in her future earnings. Future earning capacity is not marital property, *supra*. Point IV is, therefore, denied.

Husband's last two points state that the trial became personal to the trial judge for a variety of reasons. He complains that the trial judge did not allow his attorney to conduct proper cross-examination, that the trial judge was hostile and that he became an unsolicited champion for another circuit court judge who was called as a witness on wife's behalf.

We note that the trial was protracted and that both attorneys were prone to bickering between themselves. Husband's attorney tended to make unsolicited comments when wife's attorney was questioning. The trial transcript consists of three volumes totalling nearly one thousand one hundred pages; much of which was repetitive.

We have reviewed each of husband's complaints. The trial judge, it is true, articulated his vexation at the way husband's attorney continually dwelled on irrelevant issues. Our examination of the lengthy record indicates that the judge's comment was clearly warranted; but, more importantly, that none of his rulings were erroneous. An extended opinion on these points would have no precedential value. Points V and VI are denied in accordance with Rule 84.16(b).

The judgment of the trial court is affirmed.

HAMILTON, P.J., and CARL R. GAERTNER, J., concur.