**In re The Marriage of Dorothy Pearl DRIKOW, Petitioner–Respondent,**

**and**

**Marlyn Bernard Drikow,**

v.

**Marlyn Bernard DRIKOW, Respondent–Appellant,**

**and**

**Kevin Andrew Drikow, et al., Defendants.**

**No. 57895.**

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 26, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 1991.

Application to Transfer Denied March 5, 1991.

James B. Herd, St. Louis, for respondent-appellant.

Marion Harvey Pines, Clayton, for petitioner-respondent.

GARY M. GAERTNER, Presiding Judge.

In this appeal, husband, Marlyn Drikow, appeals an order from the Circuit Court for St. Louis County dissolving his twenty-eight year marriage to wife, Dorothy Drikow. Husband alleges that the circuit court erred in not awarding him certain property as his separate property, in its valuation of his business, and in awarding

maintenance to wife. We affirm in part and reverse in part.

Husband and wife were married on April 29, 1961. Four children were born of the marriage. At the time of the trial court's order, the ages of the children ranged from 17 to 26. The two youngest children, Gary (17) and Roy (20), were still dependent upon husband and wife and the trial court awarded custody of Gary to husband and custody of Roy to wife. The trial court also awarded wife $250.00 per month as child support for Roy. This portion of the trial court's order has not been appealed.

The marriage of the parties' was a rocky one. The trial court found that husband was extremely tight-fisted with money; requiring wife to account to him for virtually every penny she spent—even to the point of demanding receipts for all expenditures and encouraging their children to check up on her spending habits and report them to him. The trial court also found that in 1978 husband stopped engaging in any form of physical intimacy with his wife and refused to engage in any social life with his wife. Husband worked long hours at his store, Marlin's Sport Shop, Inc., and, when not working, was so obsessed with hunting and fishing that "they took precedence over virtually every other form of social intercourse" with wife. Although wife also engaged in various forms of marital misconduct, the trial court found that husband's actions were "extreme" and "so pervasive during the parties' marriage that the court hereby accords great weight thereto in its consideration of factors in the distribution of marital property."

On December 28, 1987, wife filed a petition for dissolution of marriage in the Circuit Court for St. Louis County. The case was heard on June 28 and 29, 1989, and, on December 15, 1989, the trial court issued its findings of fact and conclusions of law, dissolving the marriage, distributing property and awarding maintenance and child support. This appeal followed.

Husband's first two points allege error in the trial court's failing to set aside certain checking accounts, savings accounts, money market accounts and certificates of deposit as his separate property in that they were inherited property.

In 1982, husband suffered the loss of his mother and sister. Shortly after their deaths, husband received sums of money totaling close to $130,000.00. Husband deposited these funds into an account at Jefferson Savings and Loan. Although this account was opened during the parties' marriage, the account only bore husband's name. Husband also inherited real property on Bonnie Avenue in St. Louis. This real property was rented out and the rental income was used to partially retire the property's mortgage.

In 1988, husband's aunt died leaving him close to $79,000.00. This amount was also deposited into the Jefferson Savings and Loan account.

The trial court found that the Jefferson Savings and Loan account had been used as a clearing house for investments by the husband, to retire the mortgage on the marital home, to purchase certain real property and to make loans to the parties' sporting goods store. Although husband placed his childrens' names on some of the investments, the trial court found that the children did not know anything about the investments other than that their names were on them; Husband exercised complete control. Interest earned on these investments totaled close to $119,000.00. The trial court found that the interest earned on the investments was marital property and was "completely and thoroughly commingled in this account with other income and interests received over the years so that it is impossible to trace respondent's inheritance [other than the 1988 inheritance which was awarded as separate property] and to segregate them from the thousands of dollars in marital interest together with his marital earnings commingled during these years." The trial court, thus, declared the 1982 inheritance, of which $78,849.01 remained, to be marital property.

■ Husband first argues that interest earned on separate property is separate property. The basis of this claim is the 1988 change made in RSMo § 452.330.2(5).

In 1986, RSMo § 452.330.2 stated, in pertinent part:

> 2. ... "marital property" means all property acquired by either spouse subsequent to the marriage except:
>
> (1) Property acquired by gift, bequest, devise, or descent;
>
> (2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
>
> .    .    .    .    .
>
> (5) The increase in value of property acquired prior to the marriage.

In *In re Marriage Schatz*, 768 S.W.2d 607 (Mo.App., S.D.1989), the Southern District of this court held that "increase in value" in subparagraph 5 of § 452.330.2 did not cover income from separate property and stated that such income was to be considered by courts as marital property. *Schatz*, 768 S.W.2d at 611.

In 1988, RSMo § 452.330.2(5) was modified to allow non-marital property to include the "increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection unless marital assets including labor have contributed to such increases and then only to the extent of such contributions." Husband claims that this modification overruled the ruling in *Schatz* and was intended to change the meaning of "increase in value" to include income from separate property. We disagree.

The changes in RSMo § 452.330 went beyond the modification that occurred in RSMo § 452.330.2(5). The legislature also added RSMo § 452.330.4 which states that "property which would otherwise be non-marital property shall not become marital property solely because it may have become commingled with marital property." By reading RSMo § 452.330.2(5) and RSMo § 452.330.4 together, the intent of the legislature in adding the language to RSMo § 452.330.2(5) becomes clearer. The legislature did not intend to change the meaning of "increase in value", but to provide that marital assets used to increase the value of non-marital assets, and thereby become commingled with non-marital assets, may be recovered to the extent of the contribution made.

A good example of the legislative intent of this language is provided by what the trial court below did with the inherited Bonnie Avenue property. The court awarded the property to husband as separate property but recognized that marital property, the rents collected from it, was used to retire part of the mortgage—thus increasing the value of the non-marital property. The court correctly declared that portion of the Bonnie Avenue home's value attributable to the retired mortgage, $3,500.00, to be marital property. A similar result would have been reached if, rather than putting money into the home, the wife had painted the home and increased its value in that manner. The increase in value due to her labor would be marital property. This is what the legislature intended and not a change in the meaning of "increase in value." Point denied.

■ Husband next claims that the trial court erred in finding that the Jefferson Savings and Loan account and other investments were marital property in that RSMo § 452.330.4 requires more than a mere commingling to make non-marital property into marital property. We agree with husband's statement of the law but disagree with its application here.

Prior to the enactment of RSMo § 452.330.4, this court held that commingling of separate property with marital property transmuted the separate property into marital property. *Cartwright v. Cartwright*, 707 S.W.2d 469, 472 (Mo.App., E.D. 1986). As we noted in *In re Marriage of Smith*, 785 S.W.2d 764 (Mo.App., E.D. 1990), RSMo § 452.330.4 was intended to address this type of situation by making the commingling, in and of itself, insufficient to transmute separate property into marital property. *Id.* at 766. In *Smith*, the commingling combined with the retitling of separate property into both parties' names was found to be "more" than just a mere commingling. *Id.*

The case at hand also involves more than a mere commingling. The trial court found that the Jefferson Savings and Loan account was initially separate property derived from husband's inheritance. With the exception of a few withdrawals made soon after husband received the inheritances that the court found could be directly attributed to inherited property, the inherited money was invested into certificates of deposit, money market accounts, and loaned with interest to the family business. The interest, which was marital property, was then commingled with the inherited property. These commingled funds were then invested over and over again to the extent that the trial court found that it was "impossible" to trace husband's inheritance and segregate the inheritance from the marital interest. The court, thus, held that the property was marital "relying, not solely upon commingling, but also upon the failure of [husband] to sustain his burden of tracing his separate funds."

Husband claims that he did trace his funds and testified that none of the almost $119,000.00 in interest remained in the account because it was used to pay "household" and "personal" expenses. It is sufficient to note that the trial court stated that husband "was unable to prove with any degree of believability that any particular account which now exists … is still separate property." The trial court is accorded much deference in determining the credibility of a witness. *Rapp v. Rapp*, 789 S.W.2d 148, 151 (Mo.App., E.D.1990). We have reviewed the testimony offered by husband of his tracing of the funds and find the trial court's finding was not in error.

■ Husband also claims that the trial court incorrectly required that he prove the account to be separate property by clear and convincing evidence. RSMo § 452.330.3 creates a presumption that all property acquired after marriage is marital. A party claiming that property, presumed marital, is in fact separate property, must assume the burden of rebutting the presumption by clear and convincing evidence. *Rapp*, 789 S.W.2d at 150. RSMo

§ 452.330.3 does provide, however, that the presumption is rebutted if it is shown that the property was acquired by a method listed in § 452.330.2. Husband, thus, argues that, as he proved the account contained inherited funds, the presumption that the property was marital no longer applied. Husband ignores the fact, however, that a tremendous amount of marital interest was also in the account and thoroughly commingled with the inherited funds to the extent that determining what amount was marital property and what amount was separate property was "impossible." The trial court did not err in applying the presumption in this case. Point denied.

■ Husband next argues that the trial court erred in not setting aside a portion of the marital home as separate property since he paid off a portion of the mortgage with his separate property. Again, husband turns to RSMo § 452.330.4 and states that his separate funds were merely commingled with the marital property. Neither party has cited this court to *In re Marriage of Smith*, 785 S.W.2d 764 (Mo. App., E.D.1990). In *Smith*, we recognized that "the act of placing money into an account which is titled or owned jointly by both parties constitutes more than 'solely' commingling separate property with marital property." *Smith*, 785 S.W.2d at 767. The act of transferring funds to pay off the mortgage of the marital home, without indicating his intent otherwise, creates a presumption that the transfer was intended as a gift to the other spouse. *Id.* Point denied.

■ Husband next argues that the loan of $18,000.00 made to the corporation from his inherited funds should have been set aside as his separate property. We note that the court found the money used to retire the mortgage of the marital home, although procured from the Jefferson Savings and Loan account, was husband's separate property. We assume that this is because the funds deposited into the Jefferson Savings and Loan account had not yet been thoroughly commingled beyond segregation with marital funds. Several loans

to the marital business, in the total amount of $3,000.00 were made from that same account prior to paying off the mortgage. These loans were found by the trial court to be marital property. Clearly if the payment of the mortgage on the marital home was from separate property, these loans from the same account, must have also been made from separate property. We note, however, that several loans were made after that time—some of them much later. These loans may have been separate, marital or a mixture of marital and separate property. We remand this portion of the order of the trial court for a correct classification.

■ Husband next claims that the court erred in classifying sixty shares of Anheuser Busch as marital property. The only evidence adduced regarding these shares is that the husband brought them into the marriage and that in 1985 or 1986 he surrendered the original shares for "new ones." There is no evidence regarding how many shares were owned originally or why husband had to send in the shares. If the new shares were issued due to a stock split, the shares clearly retained their separate character as an exchange. *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 822–23 (Mo. banc 1984). If, however, it was part of a stock dividend, then only the dividend, as income, would be marital property. The original shares themselves would retain their separate character and are not transmuted by the mere commingling. RSMo § 452.330.4. Therefore, at a minimum, the original shares would still be husband's separate property. The correct classification of these shares must be decided on remand.

■ Husband next claims that the trial court erred in listing Gary Drikow's trust fund as marital property and in listing the account twice in its compilation of marital property. The basis of husband's complaint regarding classification of the property is that he claims the account should have been listed as Gary Drikow's own personal property. We note, however, that husband listed this account on his statement of property as his own separate prop-

erty while another son's trust account, a son from whom the husband is currently estranged, is listed as marital property for distribution between the parties. We also note that Gary knew nothing of the account. Finally, we point out that this argument was never presented to the trial court. As to the double counting of the account, there was no evidence presented to the trial court that both accounts were the same. Point denied.

Husband next claims that the trial court's valuation of the business was in error. In its findings of fact, the trial court adopted the valuation made by wife's witness, James Jennings, an accounting professor. Husband now argues that the testimony presented by another witness for wife was incompetent, but was considered by Jennings in his valuation. We believe that husband's attorney may be surprised to learn that we read transcripts at this level and not just the briefs of the parties. It is painfully clear to us from a reading of this transcript that Jennings did not consider the testimony of Harris to be of any relevancy whatsoever. The only attack made on Jennings' testimony is trivial at best. The trial court believed Jennings and disbelieved husband as it was perfectly allowed to do. *Smith*, 785 S.W.2d at 767. Point denied.

■ Husband's final point is that the trial court erred in awarding maintenance of $600.00 per month to wife. We agree.

■ The trial court is vested with considerable discretion in awarding maintenance and its orders in that respect will be interfered with only if patently unwarranted or wholly beyond the means of the payor spouse. *In re Marriage of Reed*, 762 S.W.2d 78, 85 (Mo.App., S.D.1988). (citations omitted). We need not address whether husband can afford to pay the maintenance awarded to wife in that we find that it was unwarranted in this case.

The trial court found that wife needed to spend for herself and Roy an average monthly sum of $1,704.00. In addition, the trial court found that wife received the net sum of $980.00 per month from her employment with Service Travel Company in Mexico, Missouri. The trial court, thus, award-

ed wife the amount of $600.00 per month in maintenance and $250.00 per month as child support. In its distribution of property, however, the trial court awarded wife total cash payments in the amount of $173,595.00. While wife is not required to consume her share of marital property before she is entitled to maintenance, *Hart v. Hart*, 741 S.W.2d 105, 107 (Mo.App., E.D. 1987), it would be ignoring reality for us to say that the interest earned off of the cash cannot be considered in determining whether or not wife was deserving of maintenance. At a mere 7% interest rate, wife would earn more than $1,000.00 per month in interest income in addition to the $980.00 in employment income and $250.00 in child support. The total amount of more than $2,200.00 is far in excess of what the trial court found to be her reasonable needs. To add another $600.00 per month as maintenance to this figure would be unwarranted.

The case is reversed as to maintenance, remanded for further findings on the classification of the loans to the corporation and the Anheuser–Busch stock and affirmed in all other respects.

CRIST and SIMON, JJ., concur.