**PEMISCOT COUNTY MEMORIAL HOSPITAL, Plaintiff–Respondent,**

**v.**

**Wanda L. BELL, Defendant–Appellant.**

**No. 15753.**

Missouri Court of Appeals,
Southern District,
Division One.

May 18, 1989.

Stephen P. Sokoloff, Sharp and Sokoloff, Kennett, for defendant-appellant.

James E. Reeves, Ward & Reeves, Caruthersville, for plaintiff-respondent.

HOLSTEIN, Chief Judge.

This case is an appeal from a judgment entered in a proceeding commenced under Chapter 517[1] wherein the plaintiff, Pemiscot County Memorial Hospital, filed a claim for more than $5,000. § 512.180. The claim was based upon an "educational loan contract." Following a trial to the court, judgment was entered against the defendant, Wanda L. Bell, in the sum of $7,211.95 with interest in the amount of $1,182.69 computed from May 13, 1986, to the date judgment was rendered. From that judgment defendant appeals.

Before reaching the issues raised on appeal, we note that this court entered a *sua sponte* order directing defendant to show cause why the appeal should not be dismissed due to an apparent late filing of the notice of appeal. On March 10, 1988, the initial judgment was entered. Thereafter on March 21, 1988, defendant filed a motion seeking to vacate the court's judgment or, in the alternative, grant a new trial. On

March 23 the plaintiff filed a motion to reopen the case for the purpose of presenting evidence relating to the corporate status of plaintiff. The motions were set for hearing on April 7, 1988, at which time the motion to reopen the case was sustained, additional evidence was heard, and the same judgment previously entered on March 10, 1988, was re-entered by the court. The docket sheet reflects that on May 6, 1988, defendant filed a supersedeas bond "without proper surety." The docket sheet makes no mention of a notice of appeal being filed or docket fee being paid that day; however, the stamp on the notice of appeal shows it was filed May 6, 1988. The docket sheet reflects that the notice of appeal was filed on May 24, 1988. In response to this court's *sua sponte* order, we were provided a copy of a letter addressed to the judge of the trial court and stamped filed May 6, 1988. The letter indicates that a $50 docket fee and notice of appeal had accompanied the filing of the appeal bond. Both parties have briefed the question.

There are essentially two problems created by the record. The first is that the initial judgment, entered March 10, 1988, was never specifically set aside for the purpose of entering a new judgment on April 7, 1988. The answer to the first problem is that the docket entry and the admission of additional evidence clearly show that the trial court intended to enter a new judgment on April 7. Except as otherwise provided by law, the rules of civil procedure are applicable to a Chapter 517 proceeding. § 517.021. The rules of civil procedure authorize trial courts to retain control over judgments for thirty days following the entry of the judgment during which, after giving notice to the parties and for good cause, the trial court may "vacate, reopen, correct, amend, or modify its judgment." Rule 75.01.[2] When we review a particular case to determine the date and content of a judgment, we may overlook the omission of mere matters of form and seek to determine what was in-

---

**1.** All references to statutes are to RSMo 1986 and Supp.1988.

**2.** Rule references are to Missouri Rules of Court (20th ed. 1989).

tended by the court. *Munn v. Garrett*, 666 S.W.2d 37, 39 (Mo.App.1984). The clear intent here was to vacate the original judgment for the purpose of hearing additional evidence and enter a new judgment on April 7. Consequently, the new judgment was not final for purposes of appeal until May 7, 1988. Rule 81.05.

 The second problem is that, according to the docket sheet, the notice of appeal was filed May 24, 1988. While the docket sheet did not record the filing of a notice of appeal until May 24, it is clear from the file stamp on the notice of appeal and the letter to the trial judge, provided in response to this court's *sua sponte* order, that a notice of appeal, docket fee, and appeal bond were all received by the trial court on May 6, 1988. A notice of appeal is considered filed when first received by an authorized party, and neither the disapproval of an appeal bond nor the error in a docket sheet will affect the timeliness of the notice of appeal. *Brickell v. Hopwood*, 729 S.W.2d 241, 242 (Mo.App.1987). The notice of appeal was timely filed.

Most of the facts are not disputed. Prior to June of 1982, defendant was a licensed practical nurse. In June of that year, she entered into a contract with Pemiscot County Memorial Hospital (hereafter "hospital") which provided as follows:

Pemiscot County Memorial Hospital agrees to:

1. Loan up to $750.00 per semester or $1,500.00 per year for tuition. The total amount may not exceed $3,000.00.
2. Pay stipend of $192.31 per pay period while a student enrolled and actively attending full-time courses.
3. To reduce by $1,500 for each year of full-time employment after the employee's completion of the educational program. The amount of stipend will be considered to be reduced by $2,500 for each year of full-time employment. Payback period to run concurrently. Leave of absence periods will not contribute toward the length of employment requirement in reduction of loan balances.

Student agrees to:

1. Be a full-time student.
2. Maintain satisfactory grade level.
3. Submit completion grade at the end of each semester or quarter.
4. If for any reason the loan contract is broken, the unpaid loan balance must be repaid at the current interest rate coinciding with the bank's interest rate for similar loans.
5. Work when and where assigned within the hospital upon completion of the educational program.
6. Meet all Missouri licensure, and/or certification requirements or other certification requirements of the hospital. Loan and stipend is repayable if these requirements are not met.

Thereafter on August 25, 1982, the parties entered into an "Addendum" which provided:

Addition: PEMISCOT COUNTY MEMORIAL HOSPITAL AGREES TO

4. Pay the individual premium for the Hospital health/dental benefits.

Addition: STUDENT AGREES TO

7. Work a minimum of sixteen (16) hours per pay period in compliance with this addendum.

Defendant commenced her studies to be a registered nurse in the fall of 1982 and completed the course in May of 1984. She worked as a registered nurse for plaintiff for two years. No part of the student loan remains outstanding; however, the hospital claims to have paid a total gross stipend of $8,653.95. To that amount it has added $3,558 paid for health and dental insurance premiums. It credited defendant with $5,000 for the two years during which she was employed by the hospital from May of 1984 until May of 1986, when she voluntarily terminated her employment. The hospital claimed that the net amount due them at the time she quit was $7,211.95. No evidence of the "bank's interest rate for similar loans" was presented during the trial. In its judgment, the court awarded plaintiff $7,211.95 plus nine percent interest per annum from the date of termination of defendant's employment until the date of judgment.

Defendant's brief asserts six points relied on. The first three points argue that plaintiff was not entitled to a judgment because there was no allegation of corporate capacity to sue and insufficient admissible evidence to support a finding of plaintiff's corporate existence. Points four and five, taken together, complain that the judgment is erroneous because the evidence was insufficient to support a judgment for repayment of insurance premiums. Defendant's sixth point argues that the contract had a provision for the determination of the interest rate, that plaintiff failed to produce evidence in support of the interest rate agreed upon, and, therefore, the trial court's judgment, so far as interest is concerned, is not supported by substantial evidence.

For reasons hereafter detailed, we need not directly address the admissibility and sufficiency of the evidence of plaintiff's corporate existence. The first three points revolve around the assumption that the corporate capacity to sue was at issue. We hold that it was not.

■ Plaintiff's petition did not allege the "ultimate fact" of its corporate capacity to sue and be sued as required by Rule 55.13. The rules of civil procedure apply to Chapter 517 proceedings "except where otherwise provided by law." § 517.021. In a Chapter 517 proceeding, "[t]he pleadings of the petition shall be informal" unless the court orders otherwise. § 517.031.1. All that is required of an informal petition is that it be "sufficient to advise the defendant of the nature of the action and suffices to bar another action thereon by plaintiff." *Kershner v. Hilt Truck Line, Inc.,* 637 S.W.2d 769, 771 (Mo.App.1982). Where, as here, a plaintiff's petition meets that minimal standard, pleading the ultimate fact of plaintiff's capacity, ordinarily required by Rule 55.13, is excused.

■ Defendant filed an answer to the petition but did not deny plaintiff's corporate existence or assert that the plaintiff did not have capacity to sue. Under Rule 55.13, the issue of plaintiff's corporate capacity is not properly raised unless it is asserted by a "specific negative averment" in the defendant's responsive pleading. Defendant seeks relief from this requirement by asserting that no responsive pleading is required in a Chapter 517 proceeding, and an absence of a responsive pleading is considered a denial of the allegations of the petition. § 517.031.2. However, a mere denial of corporate existence is insufficient to raise the issue under the rules of civil procedure. *Kayser Roth Co. v. Holmes,* 693 S.W.2d 907, 909 (Mo.App.1985). Because no provision of Chapter 517 excuses defendant's compliance with the "specific negative averment" requirement of Rule 55.13, a defendant in such proceeding wishing to assert the plaintiff's lack of capacity to sue must do so by pleading or motion. Rule 55.27(a)(9). Defendant here has failed to properly raise the issue and no proof of corporate capacity was required. *Kayser Roth Co. v. Holmes, supra.*

■ Defendant's next claim is that the trial court's judgment erroneously requires repayment of insurance premiums paid under the agreement when in fact there were no provisions in the contract for repayment of those premiums. We agree. " 'The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention.... A court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language....' " *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973) (quoting *Kalen v. Steele,* 341 S.W.2d 343, 346 (Mo.App.1960)). While this contract may have several points of ambiguity, it is not ambiguous regarding what is to be repaid. It states, "[l]oan and stipend is repayable" if defendant fails to perform under the contract. Nothing in the contract or addendum require repayment of health and dental benefits. The payment of the insurance premiums by plaintiff was not conditioned upon any action by defendant other than that she work sixteen hours per pay period. There is nothing to indicate defendant failed to work a minimum of sixteen hours in any pay period during which her health and dental insurance premiums were paid. The repayment

provisions in the contract are not ambiguous. Accordingly, the principal amount claimed by and awarded to plaintiff must be reduced by the sum claimed for health and dental insurance premiums.

■ Defendant's final point is that there is no proof offered by the plaintiff as to the interest rate provision of the contract. She argues the court erred in awarding nine percent interest from the date of termination. The rate of interest used by the trial court was apparently based upon § 408.020, which provides for nine percent interest per annum "when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts." The only interest rate referred to in the contract was interest on the educational loan. That loan is fully repaid. No rate of interest was agreed to regarding repayment of the stipend. Because there was no interest rate agreed upon for repayment of the stipend, the statutory rate is applicable.

We conclude that after allowing a $5,000 credit, plaintiff has only proved it is entitled to repayment of the balance of the stipend. The cause is reversed and remanded for entry of a judgment in the sum of $3,653.95 plus interest from the date of defendant's termination of employment at the statutory rate.

CROW, P.J., and GREENE, J., concur.