Ghazala RIAZ, Petitioner–Respondent,

v.

Muhammad Jawaid RIAZ,
Respondent–Appellant.

No. 55933.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 9, 1990.

Walther and Roberts, Michael C. Walther, St. Louis, for respondent-appellant.

Linda Murphy, St. Louis, for petitioner-respondent.

CRANDALL, Judge.

Husband, Muhammad Jawaid Riaz, appeals from the decree of dissolution of his marriage to wife, Ghazala Riaz. We affirm.

At the trial of this case there was sharply conflicting evidence which the trial court was called upon to resolve. The credibility of the parties was a key issue. On appeal, we do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregard contradictory evidence. *Hughes v. Hughes,* 761 S.W.2d 274, 276 (Mo.App.1988). We acknowledge the superior position of the trial court to judge factors such as credibility, sincerity, character of the witnesses and other intangibles that are not revealed in a trial transcript. *Indermuehle v. Babbitt,* 771 S.W.2d 873, 875 (Mo.App.1989). Within the guidelines of these fundamental precepts, we now review the record in this case.

Husband and wife entered into an "arranged" marriage in Pakistan on January 10, 1980, after they had known each other for only about five days. They separated in January 1987. Two children were born of the marriage: a daughter on June 5, 1981; and a son on June 11, 1986.

At the time of the marriage, husband was living in the United States. He had obtained an M.B.A. degree in the United States and was employed in Warm Springs, Virginia, a resort area. His background was in restaurant-lodging management. Wife had earned the equivalent of an M.D. degree in Pakistan. She wanted to come to the United States to specialize in neurology.

Immediately after their marriage in January 1980, husband returned to the United States. Wife was employed as a doctor in Pakistan; but left her position within two months of the marriage with a view to joining her husband who was sponsoring her entry into the United States. It wasn't until the following September 1980, however, that she arrived in Warm Springs, Virginia. In June 1981, their first child was born.

Wife resided in Warm Springs, Virginia, until July 1981, when she moved to Richmond, Virginia, to commence her internship in neurology. Wife was first in an internship program, followed by a three-year residency program and an additional year for a fellowship. For the five years that wife pursued her medical specialty, husband worked in Warm Springs four days during the week and commuted to Richmond for three-day extended weekends. During the three days he was home, husband helped with the household chores and cared for the parties' daughter while wife worked 24 hour rotations at the hospital.

In June 1986, the parties moved to St. Louis, Missouri, where wife had accepted a position with a university medical school. Husband quit his job in Virginia and told wife that he wanted to start a business with his brother, a medical doctor who also resided in St. Louis. The parties' second child was born in June 1986. Wife began her employment with the university in July 1986. Husband remained at home and did not work. In November 1986, wife sat for

her board certification exam in neurology. She became board certified in December 1986. In January 1987, wife filed for dissolution.

Wife testified that throughout the marriage husband controlled their finances in a penurious manner and was secretive about his income as well as their investments. Wife merely gave husband her paychecks and he in turn gave her $20.00 a week for spending money. He did most of the shopping for the family. Wife had to ask husband for more money if she needed it, at which time he usually berated her for requesting additional sums. Husband was argumentative and short-tempered; and he frequently hurled offending comments at wife, disparaging both her and her family. He even threatened wife physically. After the separation, husband failed to comply with a pendente lite order for child support and was over $4,300.00 in arrears at the time of dissolution.

The parties' respective earnings throughout the marriage were as follows:

| | HUSBAND | | WIFE |
|---|---|---|---|
| 1981 | $36,763.00 | | $ 8,736.00 |
| 1982 | 42,334.00 | | 17,650.00 |
| 1983 | 47,246.00 | | 19,483.00 |
| 1984 | 52,308.00 | | 21,244.00 |
| 1985 | 71,539.00 | | 24,302.00 |
| 1986 | 20,708.00 | (estimate) | 42,755.00 |
| 1987 | $ 5,240.00 | | $63,411.00 |

Wife's employment contract with the university medical center was for $60,000.00 per year, plus yearly bonuses from her particular department within the hospital. At the time of the dissolution, husband testified that he was managing two convenience stores which his brother had purchased in December 1986 and that he was earning $6.00 per hour. He denied, although his wife disputed the fact, that he possessed an ownership interest in his brother's two businesses. Husband had written two checks totalling $5,000.00 for the earnest money deposits to purchase the two businesses. He alleged that these were loans to his brother.

The trial court set aside certain property as separate property and divided the marital assets as follows:

### TO WIFE

| Separate Property | Value |
|---|---|
| Specified Jewelry | $ 4,855.00 |
| Lot in Pakistan | 38,000.00 |
| | $42,855.00 |

| Marital Property | Value |
|---|---|
| Specified Household Goods | $ 7,650.00 |
| Plymouth | 1,000.00 |
| Honda | 3,000.00 |
| IRA account | 14,500.00 |
| Wife's life insurance policy | 4,000.00 |
| Husband's life insurance policy | 4,000.00 |
| Bank account | 65,000.00 |
| Marital Home (equity) | 80,000.00 |
| | $177,720.48 |

### TO HUSBAND

| Separate Property | Value |
|---|---|
| 21 acres in Pakistan | $ 60,000.00 |
| 4 acres in Pakistan | 34,000.00 |
| Inheritance from father | 20,000.00 |
| Canadian Bank account | 2,557.00 |
| Cash prior to marriage | 30,000.00 |
| Common stock | 6,000.00 |
| | $152,557.00 |

| Marital Property | Value |
|---|---|
| Two IRA accounts | $ 30,000.00 |
| Station Wagon | 4,000.00 |
| Cash in his possession plus $5,000 earnest money | 35,000.00 |
| Bank account | 46,035.00 |
| | $115,035.24 |

The trial court awarded primary custody of the two children to wife and ordered husband to pay child support of $350.00 per child per month. The trial court also ordered husband to pay wife's attorney's fees in the amount of $5,000.00, which fees the court determined were incurred as a result of husband's attempts to hide assets. Otherwise, each party was to pay his or her respective attorney's fees.

■ In his first point, husband contends that the trial court erred in dividing the marital property because the division of property failed to take into consideration the increase in wife's "human capital" which occurred during their marriage. Husband argues that he was entitled to part of the present value of wife's projected future earnings because he supported her, not during the acquisition of her medical degree, but during her internship, residency, and board certification in neurology.

He urges that her increased earning potential be considered marital property.

Missouri courts have not recognized that an educational degree, or a professional license secured as a result of such education, constitutes marital property subject to division by the court in a dissolution proceeding. *See Roark v. Roark*, 694 S.W.2d 912, 915 (Mo.App.1985); *In re Marriage of Dusing*, 654 S.W.2d 938, 946 (Mo. App.1983). We acknowledge that some courts have accepted that the spouse who financially supports the other spouse while he or she obtains a higher education should be compensated for the increased earning capacity, or "human capital," of the educated spouse. *See generally O'Brien v. O'Brien*, 66 N.Y.2d 576, 489 N.E.2d 712, 498 N.Y.S.2d 743 (1985) (medical degree marital property); *Woodworth v. Woodworth*, 126 Mich.App. 258, 337 N.W.2d 332 (1983) (law degree marital property). This viewpoint, however, was not accepted by the Missouri Supreme Court in *Hanson v. Hanson*, 738 S.W.2d 429, 435 (Mo. banc 1987): "We have not declared future earning capacity to be marital property. We do not now do so. Instead, we leave to the trial court broad discretion in striking an appropriate balance between husband and wife in the division of property and any award of maintenance." *See also Rapp v. Rapp*, 789 S.W.2d 148, 149 (Mo.App.E.D. 1990).

We need not, however, further consider this issue in the context of this case. The factors which justify classifying the present value of the educated spouse's earning capacity as a marital asset are not present here. Husband did not provide the funds for wife to attend medical school; but rather married her after she had her medical degree and as she was ready to begin her internship program. During the years wife was pursuing her specialty, she was earning a respectable salary, ranging from approximately $17,600.00 to $24,300.00 over a five year period. Over the same period of time, husband did not forego any career opportunity but worked at a job commensurate with his educational level and nearly doubled his salary. The five years during which wife worked toward certification in her field were not lean years for the family in which the family sacrificed financially and incurred significant educational costs and debts. There were ample assets accumulated during the marriage, in contrast to the situation where the degree and its increased earning potential are the only valuable assets acquired during the marriage. *See* The Equity/Property Dilemma: Analyzing the Working Spouse's Contribution to the Other's Educational Degree at Divorce, 23 Hou.L.Rev. 991 (1986); Krauskopf, Recompense for Financing Spouse's Education: Legal Protection for the Marital Investor in Human Capital, 28 Kan.L.Rev. 379 (1980). Admittedly, there was the element of both parties working together in expectation of the deferred gratification that would come from their higher standard of living after wife was board certified in neurology. That factor alone, however, is common to most marriages and does not warrant classifying wife's increased earning potential as marital property. The trial court properly refused to consider wife's "human capital" as marital property. Husband's first point is denied.

■ In his second point, husband asserts that the trial court erred in granting primary custody of the two minor children to wife. Husband claims that he had been the sole caretaker of his daughter for long periods of time during the marriage and that he would be the superior parent. At the time of the dissolution, the children were 7 and 2 years of age.

The question of child custody is guided by Section 452.375, RSMo (Cum.Supp.1989) which requires that the trial court determine custody "in accordance with the best interests of the child." Here, there was substantial evidence that wife had been the primary caretaker of the children during the marriage. She was residing in the marital home with the children at the time of dissolution. Despite her full-time work schedule, she gave individual attention to each child when she arrived home from the university hospital. She had amply provided for child care in the form of a live-in housekeeper from Pakistan who had been a

trusted employee of her family for about 17 years. She also was steadfast in her daughter's religious education and upbringing. In sum, the evidence was that wife was a concerned and nurturing parent.

In contrast, the evidence was that husband was residing in his brother's basement at the time of dissolution. He worked long and irregular hours at the two convenience stores. His arrangements for child care when he worked during visitation was haphazard. In addition, he was frequently short-tempered and impatient with his daughter.

It is clear from the evidence that wife would afford a stable home life to the children. There was substantial evidence in the record which, if believed by the trier of fact, would support the award of child custody. Husband's second point is denied.

In his third point, husband contends that the trial court erred in dividing the marital property because it disproportionately favored wife.

In distributing the marital assets, the trial court is required to make an equitable division, but not an equal one. Section 452.330.1, RSMo (Cum.Supp.1989); *Ware v. Ware*, 647 S.W.2d 582, 584 (Mo.App.1983). Under Section 452.330.1, the court can consider the following nonexclusive factors in disposing of the marital property:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

■ Husband first challenges the trial court's finding that, as between him and wife, there were no disparate economic circumstances. He compares his meager salary of $6.00 per hour to wife's substantial salary of over $65,000.00 per year. The court specifically found that husband was "capable of earning a substantial income by reason of his education and experience and has earned $70,000.00 a year in the past," that his present income was "artificially low," and that he and his brother had "manipulated husband's income."

The trial court disbelieved husband's testimony about his salary and imputed an income to him based upon his past earnings. There was evidence that husband was interested in getting into a business of his own; and the court believed that husband "would not have quit his job had he not intended to ultimately make as much or more than his previous employment." An income of about $70,000.00 to husband compares favorably with wife's income. With husband's imputed earnings, the economic circumstances of each spouse at the time of dissolution was about equal.

Husband also claims that he contributed about 59 percent to the acquisition of marital property and that the court's division of the marital property should have reflected his greater contribution to the marital estate. There was evidence that wife, in addition to pursuing her training in neurology, assumed a larger share of the household responsibilities than husband. Husband himself acknowledges that the total monetary contribution of wife to the acquisition of the marital assets was 41 percent, an amount which is not insignificant.

■ Husband was also awarded separate property, having a total value of $152,035.24, while wife was awarded separate property in the amount of $42,855.00. In dividing the marital assets, the trial court could consider the weight to be given the fact that the property set apart to husband was greater than that set apart to wife. *See Ware*, 647 S.W.2d at 584. In addition, husband's separate property included property which was capable of producing income.

Husband also questions the values which the court placed on certain property. As to

the aggregate value of the household furnishings awarded to wife, husband asserts that it was undervalued. Wife's expert testified that the fair market value of that property was $7,560.00. The court was free to accept that figure in valuing the household goods.

As to the value of the 21 acres in Pakistan which was awarded to husband as his separate property, husband contends that it was overvalued at $60,000.00. Husband's statement of property valued the land at "$40,000.(?)." Wife's statement of property valued it at $100,000.00. Wife testified that husband had told her it was "good" farmland. In his testimony, husband equivocated about whether the farmland was, in fact, good. The trial court was free to reject husband's evaluation, which husband had indicated on his property statement as merely speculative, and to adopt a figure based upon the evidence before it. It is obvious that the court doubted husband's credibility and was skeptical of the value placed on the property by husband. The court, therefore, arrived at a figure which was not inconsistent with the evidence before it.

■ Husband also charges that the trial court erred in allocating $30,000.00 to him as marital property, thereby holding him accountable for an amount which the trial court deemed "missing" from the parties' bank accounts. There was evidence that, in December 1986, husband withdrew $146,316.00 from three bank accounts and also sold a gold bar for $12,602.00, for a total of $158,918.00. After wife filed for a temporary restraining order, husband deposited $122,602.00 into another bank account. The trial court considered the over $30,000.00 discrepancy between the amount withdrawn and the amount subsequently deposited as marital property; and, assuming it was in husband's possession, merely allotted $30,000.00 to him. When confronted with the discrepancy at the dissolution hearing, husband testified that he had sent almost $22,000.00 to his brother in Pakistan, which amount he had withdrawn from an account which was maintained in his own name; and that he also had spent $8,000.00 to cover expenses prior to his moving out of the family home.

In conjunction with the above claim, husband also disputes the court's finding that an additional $30,000.00 was husband's prior to the marriage and was therefore his separate property. He argues that the sum of $30,000.00 should have been deducted from the amount in the bank account before the court apportioned the money in that account between husband and wife. Although the court accepted husband's testimony that he had entered the marriage with $30,000.00, the court was not bound by husband's testimony that that very $30,000.00 was included in the bank account which the court ultimately divided between the parties. From the record before us, tracing does not establish that the $30,000.00 which husband allegedly possessed prior to the marriage was ever deposited with the parties' other monies. The court merely acknowledged that it didn't know precisely where husband's $30,000.00 was located; but, because husband claimed that he had entered the marriage with that amount, the court awarded it to him. The court was at liberty to disbelieve husband's contention that the $30,000.00 was part of the $122,602.00 bank account which the court divided between the parties.

The trial court's distribution of marital property was supported by substantial evidence. Husband's third point is denied.

■ In his fourth point, husband challenges the trial court's award of child support of $350.00 per child per month. The court may order a "reasonable or necessary" amount of child support after considering as one, nonexclusive factor the financial resources of the parents. Section 452.340.1(2), RSMo (Cum.Supp.1989). Here, the trial court imputed income to husband of about $70,000.00. As discussed above, it was within the discretion of the trial court to do so. In view of husband's imputed earnings, the award of $700.00 per month in child support was proper. In fact, the amount of child support awarded falls short of that amount suggested by the Missouri child support guidelines in effect

at the time of dissolution. *See* Rule 88.01. Husband's fourth point is denied.

The judgment is affirmed.

REINHARD and KAROHL, JJ., concur.