Linda S. KAHN, Appellant/Cross–Respondent

v.

Farrell KAHN, Respondent/Cross–Appellant

No. 60070.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 8, 1992.

328

Rexford H. Caruthers, Nangle, Cooper, Niemann, Bitting & Caruthers, St. Louis, for appellant/cross-respondent.

Alan C. Kohn, John A. Klobasa, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, for respondent/cross-appellant.

AHRENS, Judge.

In this dissolution case, Linda S. Kahn, wife, appeals from the trial court's decree. Farrell Kahn, husband, cross-appeals from the decree. We affirm.

Husband and wife were married June 27, 1959. On July 25, 1988, the parties separated. The trial on wife's petition for dissolution began on October 9, 1990.

Following the presentation of evidence, the trial court entered a Decree of Dissolution of Marriage on January 2, 1991. Subsequently, the trial court granted, in part, each party's motion to amend the decree. The trial court entered an Amended Decree of Dissolution on March 20, 1991.

Thereafter, Husband filed a "Motion to Correct the Amended Decree of Dissolution Entered March 20, 1991, So As To Dispose of All Property, Marital and Non–Marital, and to Correct Clerical Errors Nunc Pro Tunc and During the Court's Continued Jurisdiction." Husband subsequently filed a "Protective Motion to Further Amend the Amended Decree." On April 4, 1991, wife filed a "Motion to Correct Mistakes Arising from Oversight or Omission in the Amended Decree of Dissolution Entered March 20, 1991." Wife also filed a "Verified Motion to Vacate and Set Aside Amended Decree Dated March 20, 1991 and Enter New Decree or in the Alternative to Reopen the Case for the Admission of Additional Evidence." The trial court granted, in part, and denied, in part, the parties' motions. On April 12, 1991, the trial court entered its Second Amended Decree of Dissolution.

In her first point, wife contends the trial court "erroneously failed to specify the grounds for setting aside and vacating the Decree of Dissolution and entering the

Amended Decree of Dissolution and the Second Amended Decree of Dissolution," because "[t]he absence of specific findings renders the Amended Decree and Second Amended Decree presumptively invalid and warrants reinstatement of the original decree."

■ Husband contends wife's point was not properly preserved, because she failed to raise it in her list of "issues expected to be raised on appeal" as required under this court's Special Rule A.01(a)(3). The purpose of this local rule is to facilitate screening and docketing procedures of this court. It does not limit the Rules of the Missouri Supreme Court. Wife's point was briefed in accordance with Rule 84.04(a). We will review this point on the merits.

Wife argues that under Rules 75.01 [1] and 78.01 [2] the trial court was permitted to amend or modify its judgment only upon a showing of "good cause." Further, wife argues, "motions for reconsideration or amendment in a court-tried case impose the same requirements on the trial court as a motion for new trial." Therefore, wife argues, the trial court was required under Rule 78.03 [3] to specify the grounds for granting the new trial.

1. Rule 75.01 provides in pertinent part: "The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time."

2. Rule 78.01 provides in pertinent part: "The court may grant a new trial of any issue upon good cause shown ... On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact or make new findings, and direct entry of a new judgment."

3. Rule 78.03 provides: "Every order allowing a new trial shall specify of record the ground or grounds on which said new trial is granted."

4. Wife relies primarily on *Willis v. Willis,* 274 S.W.2d 621, 625–26 (Mo.App.1954) (an order entered "upon the same evidence and without retrial, rendering a new judgment for the opposite party" must specify the trial court's grounds for entering such order); *Farmers State Bank v. Place–Wiederholt Chevrolet–Oldsmobile, Inc.,* 747 S.W.2d 170, 172 (Mo.App.1988) (a motion

■ The cases wife cites under this point do not support her argument that a motion to amend in court-tried cases is treated as a motion for new trial, thus requiring the trial court to specify the grounds for granting the motion.[4] To the contrary, a "motion to amend" in a court-tried case is expressly permitted under Rule 73.01(a)(3). Accordingly, Rules 78.01 and 78.03 relating to specification of the grounds for granting a motion for new trial are inapplicable to a motion to amend the judgment in a court-tried case.

■ Moreover, as noted, the parties' motions to amend were filed within the fifteen days of the entry of the original decree required under Rule 73.01(a)(3). Those timely after-trial motions extended the time after which the judgment became final to ninety days or such earlier date as the trial court ruled on those motions. Rule 81.05(a). Nothing in Rules 73.01(a)(3) and 81.05(a) requires a trial court to specify its grounds amending a decree on the timely motions of the parties. Thus, because the trial court entered its order on the timely motions to amend pursuant to Rules 73.01(a)(3) and 81.05(a), it was not required to specify the grounds for amending the decree.[5] Wife's first point is denied.[6]

for rehearing in a court-tried case is treated as a motion for new trial); *Eureka Pipe, Inc. v. Cretcher–Lynch & Co.,* 754 S.W.2d 897, 899 (Mo. App.1988) (a motion for reconsideration in a court-tried case is treated as a motion for new trial); *Euge v. Golden,* 551 S.W.2d 928, 929–30 (Mo.App.1977) (in a court-tried case when a motion for new trial or motion for rehearing is filed within fifteen days after the entry of judgment, the judgment does not become final for ninety days or until the trial court rules on the motion).

5. Although not required, specifying the grounds would benefit the parties and facilitate appellate review.

6. In the argument section of her first point, wife contends that despite the "enormous transfers of marital assets from [wife to husband] and despite the absence of any corresponding transfers to [wife], the Amended and Second Amended decrees achieved approximately the same 60–40 percentage of distribution of marital assets as in the original decree." Wife asserts, "This mathematical miracle was accomplished by the trial court with a stroke of a pen," through

In her second point, wife alleges the trial court erred in dividing the parties' marital property, because under § 452.330.1 RSMo (Supp.1991), wife was entitled to more of the marital assets and marital income, in that the parties' respective contributions to the acquisition of marital property, the parties' conduct, and the economic circumstances of the parties at the time the division of property is to become effective "overwhelmingly favored [wife] to receive a disproportionate share" of the marital property.

In the second amended decree, the trial court allocated the parties' debt and divided the separate and marital property as follows:

To Wife:

| | |
|---|---|
| Separate Property: | $1,187,593.00 |
| Marital Property: | 4,224,423.00 |
| Debt Allocation: | 220,625.00 |
| NET MARITAL PROPERTY: | 4,003,798.00 |

Percentage of net marital property: 58.8%

To Husband:

| | |
|---|---|
| Separate Property: | $ 7,100.00 |
| Marital Property: | 3,743,518.00 |
| Debt Allocation: | 937,341.00 |
| NET MARITAL PROPERTY: | 2,806,177.00 |

Percentage of net marital property: 41.2%

Section 452.330.1 provides, in part, that the trial court:

... shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, ...;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage;

\* \* \*

§ 452.330.1. "The trial court has 'great flexibility and far reaching power' in dividing marital property, and there is no formula respecting the weight to be given relevant factors which the court may consider." *In re Marriage of Gourley,* 811 S.W.2d 13, 20 (Mo.App.1991) (quoting *King v. King,* 762 S.W.2d 544 (Mo.App.1989)). We must affirm the divorce decree "if it is supported by substantial evidence, is not against the weight of the evidence, and neither erroneously declares nor applies the law." *Harry v. Harry,* 745 S.W.2d 824, 825 (Mo.App.1988). Moreover, we presume the trial court considered all the evidence in dividing the marital property. *Bixler v. Bixler,* 810 S.W.2d 95, 100 (Mo. App.1991).

Under this point, wife asserts the parties' net worth at the time of trial "was almost completely accounted for by [wife's] financial contributions to the marriage through gifts and loans from her father." Wife lists those financial contributions which she asserts consisted of various gifts of stock, oil interests, real estate, and reimbursement of oil operating expenses. Wife asserts the "prior inherited (or gifted) status of property which has been commingled in the marital estate is a totally appropriate factor for the trial court to consider in making a division of marital property."

Husband testified regarding his improvements to and management of the stock, oil interests, and real estate. It is not our function to retry this case; "rather we accept as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregard

"shifting 65,674 shares of Tiffany stock ..., from Linda's separate property to marital property" and transferring husband's five percent interest in Metropolitan Sand and Gravel to wife as marital property while increasing the value of the asset from $7,713 to $126,775. To the extent wife's argument is intended to challenge the trial court's award, the evidence supporting the award of Tiffany stock is outlined in

our discussion of wife's third point. With regard to Metropolitan Sand and Gravel, the trial court's valuation of the five percent interest at $126,775 was within the range of values in evidence. "When the amount determined is within the range of evidence, an appellate court will not find the determination erroneous or weigh the evidence." *In re Marriage of Lewis,* 808 S.W.2d 919, 925 (Mo.App.1991).

contradictory evidence." *Riaz v. Riaz,* 789 S.W.2d 224, 225 (Mo.App.1990). "We acknowledge the superior position of the trial court to judge factors such as credibility, sincerity, character of witnesses and other intangibles that are not revealed in a trial transcript." *Id.* Accordingly, the trial court could consider husband's testimony in determining the contribution of each party to the acquisition of marital property. Nothing in the record indicates the trial court failed to consider the parties' relative contributions when it divided the marital property.

■ Wife asserts she contributed to the acquisition of marital assets through reimbursements the parties received for operating expenses paid to a company owned by wife's father, Joe Simpkins. We note that at trial wife asserted these reimbursements were loans for which she had signed notes. On appeal, however, wife asserts the sums were gifts from her father. Husband testified at trial that the sums received as reimbursements were gifts from wife's father to husband and wife to assist them in paying the expenses of pending litigation and life insurance premiums on the life of wife's father. We defer to the trial court's determination of credibility in weighing the relative contribution of each party to the acquisition of marital property via the reimbursement of oil operating expenses.

Wife contends husband's losses from investments and projects warranted a disproportionate award of marital property to wife. She asserts, "a review of the facts surrounding many of [husband's] projects reveals that his entrepreneurial efforts cost the marriage more than the marriage gained." Nothing in the record, however, indicates the trial court failed to consider evidence of those losses in determining the relative contribution of the parties to the acquisition of marital property and in dividing that property.

■ Wife next asserts that in dividing the marital property, the trial court, under § 452.330.1(4), should have considered the conduct of the parties during the marriage. There was evidence husband engaged in more than one extramarital affair and wife engaged in one such affair. Section 452.-330.1(4) "was never intended to authorize judicial censure of either party by means of a wholly disproportionate distribution of marital property." *In re Marriage of Sumner,* 777 S.W.2d 267, 274 (Mo.App. 1989). In light of the evidence of the parties' conduct, we cannot say the trial court erred in determining wife was not entitled to more than 58.8% of the marital property.

In her final contention under this point, wife contends the "only evidence that is properly before the Court with respect to the economic circumstances of [wife and husband] consists of the current assets which are described in the joint statement of property and in the evidence." Wife asserts husband "has frantically tried to get before the Court the possibility that [wife] might inherit from her father, Joe Simpkins." We find no indication that the trial court considered anything outside the record in determining the award of marital property. Likewise, our review has been confined to the record properly before us.

We find substantial evidence in the record to support the trial court's award. Point two is denied.

■ In wife's third point, she contends the trial court "exceeded its jurisdiction by including 88,584 shares of Tiffany Industries stock as marital property of [wife]" because "there is absolutely no evidence in the record to support a finding that 88,584 shares of stock of Tiffany Industries stock were marital property," in that "the credible evidence in the case shows beyond doubt that only 22,830 shares of the 150,-000 shares owned by [wife] were marital property and that the remaining 127,120 shares of Tiffany Industries stock were [wife's] separate property, gifted to her by her father or inherited from her mother."

Contrary to wife's assertion that no evidence supported a finding that 88,584 shares of Tiffany stock were marital, "[i]n a dissolution action the burden is on the spouse who claims that the property is separate to overcome the presumption of marital property and show that it falls into one of the exceptions listed in [§ ]452.330.2,

RSMo 1986." *True v. True*, 762 S.W.2d 489, 492 (Mo.App.1988). The exceptions enumerated in § 452.330.2 are:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions."

§ 452.330.2.

Wife failed to overcome the burden of demonstrating the challenged stock was her separate property. Rather, wife was able to show only that as evidenced by the Federal Gift Tax returns of her father, she received 22,500 shares of Tiffany stock as gifts from her father between 1969 and 1976; and as evidenced by probate court records, she inherited 38,916 shares from her mother's estate in 1976. Accordingly, this evidence supports the trial court's finding that only 61,416 shares are wife's separate property.

In support of her argument that she was entitled to all the shares as separate property, wife contends the 150,000 shares were in her name and, as demonstrated by footnotes in the proxy statements of Tiffany Industries in 1970, 1971, and 1977, each party "disclaim[ed] beneficial ownership of shares owned by the other...." We note the "trial court possesses broad discretion in identifying marital property." *Harry*, 745 S.W.2d at 825. We cannot say the trial court abused its discretion in identifying 88,584 shares as marital property. Even assuming the footnotes in the corporate documents of Tiffany Industries are binding on husband in this dissolution action, at most those footnotes show only that as of 1977, husband disclaimed "beneficial inter-est" in 41,840 shares then owned by wife. The evidence does not indicate husband disclaimed interest in any shares acquired after 1977. Accordingly, wife failed to overcome her burden with respect to those shares in excess of 61,416.

Additionally, we do not find relevant wife's assertion that in 1986 husband gifted 40,000 shares of his Tiffany stock to the parties' children. Husband denied he had made the gift. In any event, the trial court was faced with determining the status of the 150,000 shares wife contends were in her name. We find no abuse of discretion in identifying 88,584 shares of Tiffany stock as marital property.

In a subpoint of her third point, wife contends the trial court had "no jurisdiction to enter a decree apportioning as marital property that which is separately owned by either party." Wife cites *Weast v. Weast*, 682 S.W.2d 86, 87 (Mo.App.1984), as support for her argument. Contrary to wife's contention, however, the trial court did not apportion wife's separate property as marital. As noted, wife established that only 61,416 shares are her separate property. Accordingly, the trial court properly divided the remaining 88,584 shares as marital property.

Point three is denied.

Wife's fourth point alleges the trial court's judgment "was wrong, unjust and against the weight of the evidence," and the judgment "should be reversed and the original decree should be reinstated." Wife acknowledges that our standard of review is narrow; however, she argues this case is one which requires reversal because, she alleges, under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976), the trial court's judgment is wrong, an injustice has occurred, and the judgment is against the weight of the evidence. The record supports the trial court's judgment. Therefore, reversal is not warranted under *Murphy*. Point four is denied.

### Husband's Cross–Appeal

In the first point of his cross-appeal, husband alleges the trial court "par-

tially exceeded its jurisdiction in the second amended decree by revaluing and reallocating certain assets for reasons totally unrelated to the allocation of previously unallocated assets." Husband contends that except for correcting clerical errors and distribution of undistributed marital property, the trial court lost jurisdiction over the case when it entered the first amended decree disposing of the parties' motions to amend the original decree.

Initially, in considering this point, we note that husband's reliance on *In re Marriage of Schwartzkopf,* 624 S.W.2d 23 (Mo. App.1981), is misplaced. That case considered the scope of a trial court's jurisdiction where the case was remanded to determine whether an undistributed pension plan "represented such a 'substantial portion of all marital property' so as to justify a new, redivision of all marital property." *Id.* at 25 (quoting *Govero v. Govero,* 579 S.W.2d 152, 154 (Mo.App.1979)).

The first amended decree set out anew the trial court's (1) findings and conclusions regarding the dissolution of the marriage; (2) orders regarding maintenance, attorney fees, and taxing of costs; and (3) valuation and distribution of marital and separate property, which differed substantially from those set forth in the original decree. From the form of this decree, it is apparent the trial court intended that first amended decree to constitute a new judgment. "When we review a particular case to determine the date and content of a judgment, we may overlook the omission of mere matters of form and seek to determine what was intended by the court." *Pemiscot County Memorial Hosp. v. Bell,* 770 S.W.2d 499, 500–01 (Mo.App.1989).

As previously noted, following the entry of the first amended decree, various motions were filed, including wife's "Motion to Correct Mistakes Arising from Oversight or Omission in the Amended Decree of Dissolution," which requested, pursuant to Rule 74.06(a)[7], that the court add a

sentence to the first amended decree indicating the court's intent to vacate and set aside the original decree. Thereafter, the trial court sustained in part and denied in part the parties' various motions. In its order ruling on those motions and entering the second amended decree, the trial court stated, "With the exception of the provisions dissolving the parties' marriage, the Decree of Dissolution entered January 2, 1991, and the Amended Decree of Dissolution entered March 20, 1991, are vacated, set aside, and for naught held." Thus, it is apparent from the record that the trial court granted wife's "Motion to Correct Mistakes" pursuant to Rule 74.06(a). In so ruling, the trial court clarified its intention that the original decree was to have been vacated upon the entry of the first amended decree.

As such, the first amended decree entered on March 20, 1991, was not merely the disposition of the parties' authorized after-trial motions to amend the original decree; rather, it constituted a new judgment over which the trial court had jurisdiction for thirty days under Rule 75.01. *Schreier v. Schreier,* 625 S.W.2d 644, 647 (Mo.App.1981). That jurisdiction was subsequently extended under Rule 81.05 when the parties filed timely motions to amend that new judgment. *See Schreier,* 625 S.W.2d at 647. Husband's first point is denied.

In the second point of his cross-appeal, husband contends the trial court erroneously entered the second amended decree, because that decree "is against the weight of the evidence, erroneously applies the law and constitutes an abuse of discretion." Husband contends that "application of the relevant factors set forth in § 452.330, RSMo mandate an equal division of the net marital property."

"The trial court has broad discretion in dividing marital property." *Rogers v. Rogers,* 803 S.W.2d 92, 95 (Mo.App.1990). "The division must be just but it need not

---

**7.** Rule 74.06(a) provides, in part: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at

any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."

be equal." *Id.* Nothing in the record demonstrates the trial court failed to consider the factors enumerated in § 452.330 when it divided the parties' marital property. As noted in our discussion of wife's second point, the trial court's division of the marital property was supported by substantial evidence. Husband's second point on his cross-appeal is denied.

Husband's third point on his cross-appeal asserts the trial court erred in setting aside to wife as her separate property: "61,416 shares of Tiffany Industries, Inc.[;] a 22½ interest in Metropolitan Sand & Gravel, and the Parklane Manor Real Estate because those assets were partly marital by virtue of marital funds and labor utilized to enhance and preserve their values."

Husband acknowledges wife inherited these items from her mother during the marriage. Property acquired by "gift, bequest, devise, or descent" subsequent to the marriage is excluded from the definition of marital property under § 452.330.-2(1). "The definition of 'marital' funds is generally an issue of law, but the question whether an increase in the value of separate property was produced by marital funds or efforts is usually a question of fact." *In re Marriage of Schatz*, 768 S.W.2d 607, 611 (Mo.App.1989). The parties did not request, and the trial court did not make, specific findings concerning the enhancement and preservation of the values of wife's inherited property. Rule 73.-01(a)(2) provides "that all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *In re Marriage of Schatz*, 768 S.W.2d at 612.

Husband argues that under § 452.330.-2(5), the increase in the value of wife's inherited property became marital because "the undisputed evidence showed that the Kahns paid out of marital funds at least $65,000 (net) for taxes and other expenses assessed against or owed by the estate of [wife's] mother in order to prevent the liquidation of this inherited stock...." In support of this argument, husband directs us to an exhibit consisting of various checks, deposit slips, bank statements, and memoranda. On their face, the documents in that exhibit are not conclusive evidence of unreimbursed advances of marital funds to the estate of wife's mother. Husband also directs us to his testimony regarding that exhibit. According to that testimony, husband and wife advanced marital funds to the estate of wife's mother for the payment of taxes.

■■■ Husband and wife disagree about the scope of the trial court's grant of wife's motion to strike when husband testified he had located "approximately sixty-five thousand dollars worth of funds that never came back to our account from the estate. But I believe there were more than that." It is unnecessary for us to determine whether the trial court's ruling was directed to both sentences, or limited to the last sentence of that testimony. The trial court was in a superior position to judge the credibility of the witnesses, and we must accept as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregard contradictory evidence. *Riaz*, 789 S.W.2d at 225. From the trial court's action in setting aside the Tiffany stock as wife's separate property, we must conclude the trial court found the estate reimbursed any marital funds husband and wife advanced to it. Rule 73.01(a)(2).

Husband raises the same argument with regard to wife's interest in Metropolitan Sand & Gravel (Metropolitan), a partnership. For the reasons stated above, we are not persuaded by that argument.

■■■ Husband also argues marital funds were used to enhance and preserve the value of wife's inherited interest in Metropolitan, because the parties "annually paid to Metropolitan ... assessments for their share of expenses to maintain the land." Husband directs us to an exhibit comprised of checks to Metropolitan which were drawn on the "Kahn Properties" account in 1981 and each year from 1983 to 1987. Husband identified that exhibit as "copies of checks that were written to Mr. Simpkins for assessments for *our* interest in the Dallas property." (Emphasis added). The parties acquired a five percent interest in

the partnership prior to the death of wife's mother. Accordingly, absent specific findings, we must conclude the trial court found that the checks on which husband relies merely represented payment of assessments due on the parties' jointly owned five percent interest, and did not constitute an increase in value produced by marital funds or efforts. Rule 73.01(a)(2).

■ Finally, with respect to Metropolitan, husband argues his "marital labors enhanced the value" of the land owned by the partnership. Husband testified Simpkins asked him to manage the property owned by the partnership. We must conclude from the trial court's decree that it found husband's "efforts" in enlarging Metropolitan's land holdings, managing "the land for years, running livestock and farming operations and leasing parts of the land" were not "marital labors" as such, but were part of his duties in managing the property on behalf of the partnership of which wife inherited a twenty-two and one-half percent interest. Rule 73.01(a)(2).

■ With respect to the Parklane Manor real estate, husband argues the parties used "at least $100,000 of marital assets to preserve and enhance the value of this land." Husband contends an exhibit consisting of checks totalling over $52,000 drawn on the "Kahn Properties" account and an account in the name of "F. or L. Kahn" supports his argument. Although the majority of those checks are made payable to the St. Clair County Collector, husband presented no corresponding tax bills describing the property on which the taxes were paid. Similarly, no vouchers or invoices were presented to explain the remaining checks which husband asserts were issued to preserve and enhance the Parklane Manor real estate.

Further, husband's argument that his "marital labor substantially enhanced the value of this land" is not supported by the record. Although husband stated he listed lots in Parklane Manor with realtors and negotiated contracts on the land, he acknowledged, "None of them have come to fruition." Again, we must conclude that the trial court found any increase in the value of Parklane Manor was not the product of marital funds or efforts.

The trial court's action in setting aside as wife's separate property the inherited Tiffany stock, interest in Metropolitan, and Parklane Manor real estate is supported by substantial evidence, is not against the weight of the evidence, and constitutes neither an erroneous declaration nor an erroneous application of the law. *Harry,* 745 S.W.2d at 825. Husband's third point on his cross-appeal is denied.

■ Husband's fourth point alleges that in valuing the Tiffany stock, the trial court erred in adopting the value of the stock as calculated by wife's expert witness, because the value "was against the weight of the evidence, not calculated in accordance with accepted valuation principles and too remote in time from the date of trial." Husband contends the trial court should have adopted the value of $11.89 per share as calculated by his expert witness.

"The trial court is entitled to believe or disbelieve testimony, including expert testimony, of either party concerning property valuations." *In re Marriage of Gourley,* 811 S.W.2d at 20. Further, when, as here, the trial court's determination of value is within the range of evidence, this court will not find that determination erroneous or weigh the evidence. *In re Marriage of Lewis,* 808 S.W.2d 919, 925 (Mo.App.1991). Husband's point is denied.

■ In his final point, husband alleges the trial court erred "in assigning a value to Northslope Properties, an asset which the undisputed evidence showed had no value." Husband asserts the trial court's valuation of Northslope Properties at $44,-000 was not supported by the evidence, because, according to the Joint Stipulation of Uncontested Facts, Northslope Properties is engaged in the business of operating gas and oil producing properties, but owns no interests in such properties. Further, husband argues, Northslope's only asset is a bank account containing $1,517 which was distributed to husband as marital property.

Wife asserts that the trial court's valuation of the stock in Northslope Properties was justified, because from fiscal year 1985 through fiscal year 1988, husband "received auto, travel, and entertainment expenses from Northslope" which averaged "almost $44,000 per year...." Wife directs us to a schedule of automobile, travel and entertainment expenses which appeared on Northslope Properties' tax returns during those years. The accountant who prepared that schedule could not testify who had incurred the various expenses. Nevertheless, husband testified he is the chief executive officer of Northslope Properties, which he created to principally develop and operate properties owned by husband, wife, and their children.

"We accept as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregard contradictory evidence." *Riaz,* 789 S.W.2d at 225. A reasonable inference from the evidence is that husband received from Northslope Properties the benefits associated with payment of auto, travel, and entertainment expenses totalling in excess of $44,000 each fiscal year from 1986 through 1988. The trial court's valuation of Northslope Properties is supported by substantial evidence, is not against the weight of the evidence, and constitutes neither an erroneous declaration nor an erroneous application of the law. *See Harry,* 745 S.W.2d at 825. Husband's fifth point on his cross-appeal is denied.

The trial court's judgment is affirmed.

SMITH, P.J., and KAROHL, J. concur.